E. RAYMOND FRANCHELL, Individually and as Administrator of the Estates of MICHAEL J. FRANCHELL and JOHN W. FRANCHELL, Both Deceased, Appellant, v ROBERT R. SIMS et al., Respondents.

Fourth Department, February 20, 1980

2

## APPEARANCES OF COUNSEL

*MaGavern, MaGavern, Lowe, Beilewech & Dopkins (George Rich* of counsel), for appellant.

*Smith, Murphy & Schoepperle (Richard Schoepperle* of counsel), for respondents.

4

OPINION OF THE COURT

CARDAMONE, J. P.

On September 5, 1976 two brothers, Michael and John Franchell, were fatally injured in an automobile accident in West Monroe, New York. An action was brought by their father, the plaintiff, Raymond Franchell, individually and as administrator of their estates, to recover for their wrongful deaths and conscious pain and suffering. Prior to the trial defendants Robert R. Sims and Sims Match Plate Corporation stipulated to their negligence, the decedents' lack of contributory negligence and to the reasonableness of the funeral and ambulance expenses in each case. Only damages remained to be tried. The jury returned a verdict in the sum of $3,300 for the wrongful death at age 22 of Michael Franchell and $5,840 for the wrongful death at age 16 of John Franchell and $1,000 for his conscious pain and suffering, together with a total for both cases of $4,909.01 for the stipulated amount for ambulance and funeral expenses. From this judgment and an order denying a motion to set it aside on the grounds that the verdicts were inadequate the plaintiff appeals.

■ The principal issue raised is whether the jury's award for the pecuniary loss suffered on account of the death of Michael and John Franchell was inadequate. We believe that it was.

The facts presented at this five-day trial reveal that 22-year-old Michael was a high school graduate employed as an inspector at an industrial plant and that John was a high school student. Both were in excellent health, maintained average or above average grades in school, were outgoing and had many friends. Their parents, Raymond and Marlyn, were 49 and 48 at the time of the trial with life expectancies of 25.1 and 32.1 years respectively, and also were in excellent health. Evidence of Michael's future potential to his parents is derived from the fact that he was industrious and hardworking during his high school years and a year after he graduated obtained employment at the Chevrolet Plant in Tonawanda, New York. Except for periodic layoffs, he worked steadily until the time of his death. His starting hourly wage was $4.64 an hour and had he returned in September, 1976 his hourly wage would have been $6.93. The testimony demonstrates that Michael maintained a close and loving relationship with his family; that he would "do almost anything for anybody" and that "he gave his heart to everybody". It is

clear from the record that Michael performed valuable services for his parents, contributed financially to their household and was a generous and dutiful son. There was no proof, other than her testimony, that he planned to marry the witness, Debra Rust, with whom he was living. In any event, the record strongly indicates that if and when Michael had married it would not have affected his close and devoted relationship towards his parents.

John Franchell possessed the same personal qualities and traits as his older brother Michael. Evidence of his future potential to his parents is shown by proof that he too was industrious and hardworking, engaging in part-time jobs such as mowing lawns, raking leaves, shoveling snow for neighbors, fishing golf balls out of ponds and selling them. He also worked for his older brother, Ernie, in construction and was very helpful around the house. The record further shows that John was heading towards a promising career. His printing instructor testified that John was industrious and a good student, and he felt that John had a great future in the graphic arts field. At the time of his death, he maintained a close and loving relationship with his parents and other siblings.

In a wrongful death action the amount of recovery is measured by the "fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought" (EPTL 5-4.3). Determining "fair and just" compensation is complex because the amount of pecuniary loss tends to be uncertain and problematical. Where parents are the plaintiff beneficiaries the pecuniary injuries include loss of their child's services (67 NY Jur, Wrongful Death, § 167), not limited to the decedent's minority. Fair compensation may properly include probable, or even possible, benefits which might inure to the parents from their child's entire life, taking into consideration the possibility of failure or misfortune (*Birkett v Knickerbocker Ice Co.,* 110 NY 504, 508; *Bowles v Rome, Watertown & Ogdensburg R. R. Co.,* 46 Hun 324, 327, affd 113 NY 643). Among the myriad factors to be considered are the decedents' physical status—which includes factors such as age, sex, life expectancy, state of health, habits; and the decedents' earnings potential—i.e., character, quality, intelligence, present and future earnings and probability of means to support parents, if they are in need. Also to be viewed is the relation-

ship between decedent and those claiming to suffer pecuniary loss and those persons' health, age and circumstances *(Windus v Baker,* 67 AD2d 833, 834; *Freeman v Corbin Ave. Bus Co.,* 60 AD2d 824, 825; *Lyons v De Vore,* 48 AD2d 943, 944, affd 39 NY2d 971; *Tenczar v Milligan,* 47 AD2d 773, 775).

■ The assessment of damages in a wrongful death case is peculiarly within the province of the jury whose determination should not be disturbed unless it is so excessive or inadequate that it shocks the conscience of the court *(Welty v Brown,* 57 AD2d 1000, 1001). Since there is little probability that the facts in any two wrongful death cases will be alike, and, in arriving at a proper award, an infinite variety of human characteristics and family situations affect the numerous factors which must be examined, each case must be viewed on its own merits with respect to the damages recoverable.

Applying these principles to the instant cases, we find that the damages awarded in each wrongful death action are so inadequate as to shock the conscience of this court *(Bell v Cox,* 54 AD2d 920; *Russell v Cirillo,* 17 AD2d 1005).

■ Several other issues remain to be determined. Plaintiff was not permitted to submit an economist's testimony to show the prospective earnings of Michael and John during the lifetimes of their parents. The trial court properly excluded this testimony. In *Bartkowiak v St. Adalbert's R. C. Church Soc.* (40 AD2d 306), we stated that while expert testimony is usually admissible as to a decedent's future prospects when they are not matters within the general knowledge of the jurors, "[n]evertheless, a bare statement of projected earnings expressed in a dollar amount derived from a mathematical formula based on 26.2 years' life expectancy of decedent's mother would be speculative and prejudicial while its probative value on the amount which decedent might actually have contributed is remote and slight" *(Bartkowiak v St. Adalbert's R. C. Church Soc., supra,* p 311).

■ Plaintiff further argues that the trial court erred in permitting defendants to cross-examine plaintiff with respect to plaintiff's income tax returns. The amount of damages recoverable depends upon which distributees survive the decedent. Their status—including the extent of their dependency upon the decedent and the probable benefits they would have received from the decedent except for the death—must be weighed in order to ascertain their probable loss by reason of

the death (9A Rohan, NY Civ Prac, EPTL 5-4.3 [3], p 5-384; *Woodard v Pancio,* 65 AD2d 923, 924; see *Matter of Payne,* 12 AD2d 940). Financial dependency is not a precondition to recovery (9A Rohan, NY Civ Prac, EPTL 5-4.3 [2], p 5-376; *Gross v Abraham,* 306 NY 525, 531). It is relevant, however, in determining the amount of damages sustained *(Wishart v Andress,* 46 AD2d 998, 999; see *Breckir v Lewis,* 21 AD2d 546, 550, affd 15 NY2d 1027). It is prejudicial error to receive evidence as to the financial condition of plaintiff as next of kin of decedent where the introduction of such proof on the part of plaintiff was calculated to arouse the sympathies of the jury and to obtain a verdict based on elements of loss not contemplated by the statute *(Murphy v Erie R. R. Co.,* 202 NY 242, 245-246; *Chilelli v Long Is. R. R.,* 271 App Div 894, 895; *McCormick v Merritt,* 232 App Div 619, 623). Here, since plaintiff elected to put his financial condition in issue, cross-examination with respect to his income tax returns was appropriate.

In connection with the same issue of dependency plaintiff further contends that the trial court erred in refusing to charge the jury that pecuniary loss to plaintiff was not diminished because he had independent income. The trial court's charge properly covered the various factors in determining "pecuniary loss" to the Franchells and we find no error in its refusal to make the requested charge.

Similarly, inasmuch as plaintiff introduced evidence of the existence of his surviving children and numerous details of their lives he suffered no prejudice as a result of the trial court's refusal to charge that the pecuniary loss to plaintiff is no less because of the existence of such surviving children.

Finally, no error was committed by the trial court in restricting the scope of plaintiff's cross-examination of Debra Rust since whether she had been previously married or lived with other men is a collateral issue the scope of which is largely within the discretion of the trial court *(Radosh v Shipstad,* 20 NY2d 504, 508).

The judgment and order should be reversed and a new trial granted solely on the issue of damages unless defendants stipulate to increase the amount of damages in the wrongful death action of Michael Franchell to $25,000 and in the wrongful death action of John Franchell to $30,000 in addition to his conscious pain and suffering award and the stipulated expenses in each case for ambulance and funeral ex-

penses; in the event that such stipulation is filed the judgment, as modified, should be affirmed.

SIMONS, HANCOCK, JR., CALLAHAN and DOERR, JJ., concur.

Judgment and order unanimously reversed without costs and a new trial granted solely on the issue of damages unless defendants stipulate to increase the verdict in accordance with opinion by CARDAMONE, J. P., in which event the judgment as modified is, together with the order, affirmed.