(December 23, 1980)

■ MARY L. DERLETH, as Administratrix of the Estate of JOHN D. DERLETH, Deceased, Appellant, v MICHAEL J. NAUGHTON, JR., et al., Respondents.—Judgment and order affirmed, without costs. All concur, except Callahan, J., who dissents and votes to reverse and grant a new trial on the issue of damages only, in the following memorandum:

Callahan, J. (dissenting). I respectfully dissent and vote for a new trial on the issue of damages. In my view the jury's award of $15,000

for the pecuniary loss suffered from the death of plaintiff's 20-year-old son was grossly inadequate. I concur with the opinion expressed in appellant's brief that "Based upon any objective view of the personal qualities and contribution of the decedent to his parents, the jury's verdict in this case is medieval and inadequate to the point of disgrace." Such a verdict is shocking to my conscience and should be set aside. Recently, in *Franchell v Sims* (73 AD2d 1) we restated in detail the principles applicable in reviewing fair and just compensation for the pecuniary injuries resulting from a wrongful death to the person for whose benefit the action is brought (see, also, EPTL 5-4.3). While this task is complex, it should include probable, or even possible, benefits which might inure to these parents from their child's entire life. This jury could not have given proper consideration to all of the elements of damage and reached such a low figure. At the time of his death, John Derleth was in good health with a life expectancy of 50.4 years. He had graduated from high school and was attending Monroe Community College, preparing for a career in the field of business management. The record establishes that John was a hardworking, industrious individual with exceptional leadership potential. At age 12 he began helping his father at handyman jobs in the evenings and on weekends for which he was paid $2 per hour. Within three to four years he became quite proficient at electrical wiring and plumbing. John always earned his own money and did not ask for any when he commenced his college career. He had a paper route at one time, mowed lawns and shoveled snow for neighbors, as well as for his parents. In adddition he was handy with automobiles and worked on many of them for friends, family and others. When 16, he completely refurbished a 1957 MGA at home in the garage over the course of a year. In high school he played both baseball and football and was voted cocaptain of the varsity team by his fellow players and coach for both his junior and senior years. While in high school he also worked part time at a pizza parlor and as a bus boy at a prime rib house. About the time he graduated from high school he was doing drywall work for a friend and earned between $100 and $250 depending on the job. John's parents, Francis and Mary Lou Derleth, both 49 at the time of his death, were in good health with life expectancies of 24.3 and 30.2 years respectively. The record in this case is complete with additional proof of John's contributions not only of the work performed with his father, but for his parents individually and on behalf of the family unit around the the house. He worked on the family car and contributed $20 to his mother out of each paycheck, the amount sometimes varying depending on her needs. When he was 17, at a time when his mother accompanied John's father at a job in Mexico, he stayed home and took care of his younger sister and brother, depositing his father's paychecks in the bank, paid the household bills and collected rent from income property owned by his father. He was a very thoughtful and loving son, remembering his parents' birthdays and was generous to them with gifts. There is no way in my view that this jury verdict should be affirmed under the law and established principles. (Appeal from judgment and order of Monroe Supreme Court—wrongful death.) Present—Dillon, P. J., Cardamone, Hancock, Jr., Callahan and Moule, JJ.

