*665
 
 OPINION OF THE COURT
 

 Kaye, J.
 

 Plaintiffs — the two grown grandchildren of a woman murdered in an apartment leased from defendant, New York City Housing Authority — were awarded damages for their grandmother’s wrongful death, and for her conscious pain and suffering. Contesting neither liability nor the dollar amount of the award, defendant challenges the availability of wrongful death damages on the ground that plaintiffs have not established that they suffered any "pecuniary injuries” (EPTL 5-4.3 [a]), and it challenges any award for conscious pain and suffering as lacking evidentiary basis. We conclude that damages for both wrongful death and conscious pain and suffering were properly allowed, and therefore affirm the Appellate Division order in plaintiff’s favor.
 
 *
 

 I.
 

 Then 76 years old, decedent was murdered in March 1984 in her apartment in the Isaac Homes Housing Project at First Avenue and 92nd Street, New York City. She was discovered with her hands tied behind her back, a gag wrapped around
 
 *666
 
 her jaw and mouth, and her right foot tied to the leg of a bureau. An autopsy revealed fractures of her neck and eight ribs, bleeding where teeth had been knocked out, and bruises on the back of her head and hand. The cause of death was described in the autopsy report as "Asphyxia by gagging. Contusions of scalp, fractures of ribs and cervical spine.” Her assailant was subsequently convicted of the murder, and of raping and robbing two other women in the building.
 

 Decedent was survived by her daughter-in-law and two grandchildren: plaintiffs Marta Gonzalez, 21 years old at the time of the murder, and her brother Antonio Freire, then 19. Decedent had raised them both, because their father (her son) had died in 1965 and their mother (her daughter-in-law) was mentally ill; as the Appellate Division observed, decedent had for many years been a "mother” to her grandchildren. At the time of the murder, however, both plaintiffs were financially independent and they no longer lived with her. The granddaughter lived separately with her husband, and the grandson had a construction job and an apartment a few blocks away.
 

 Although decedent had retired from her job as a housekeeper several years before the crime, she remained active. She prepared dinner every night for her daughter-in-law, who was unable to cook for herself. Marta Gonzalez went to her mother’s house every day, and frequently had her meals with them. She testified that her grandmother had more patience with her mother than she did, and would help her cope with her mother’s condition. Antonio Freire testified that he visited his grandmother every other day, and that she frequently prepared his meals as well.
 

 The decedent also helped her granddaughter in other ways. The month before the crime, when her granddaughter was having marital problems, decedent permitted her to live with her for a week until she could return home. At the time of the murder, Marta Gonzalez was pregnant, and together she and her grandmother planned that the grandmother would care for the child while she returned to school.
 

 After trial, a jury awarded plaintiffs $1,250,000 for wrongful death and $1,000,000 for conscious pain and suffering, which the trial court reduced to $100,000 and $350,000. Defendant appealed to the Appellate Division solely on the damages issues. That court unanimously affirmed the plaintiffs’ award, as do we.
 

 
 *667
 
 II.
 

 Under the common law of England, it was not possible to maintain a damages action for wrongful death. This was the law in New York and other American jurisdictions as well
 
 (Liff v Schildkrout,
 
 49 NY2d 622, 631-632;
 
 Moragne v States Mar. Lines,
 
 398 US 375, 381-386). "The result was that it was cheaper for the defendant to kill * * * than to injure [the plaintiff], and that the most grievous of all injuries left the bereaved family of the victim, who frequently were destitute, without a remedy.” (Prosser and Keeton, Torts § 127, at 945 [5th ed].)
 

 That inequity was ameliorated in England in 1846 by passage of the Fatal Accidents Act, creating a remedy for wrongful death. New York was the first State to follow suit, and in 1847 adopted a statutory cause of action for wrongful death, now embodied in EPTL 5-4.1 (Speiser, Recovery for Wrongful Death § 1:9, at 29 [2d ed]). The statute authorizes the personal representative of a decedent survived by distributees to maintain an action for wrongful death. Since the statute is in derogation of common law, it must of course be strictly construed
 
 (Farrar v Brooklyn Union Gas Co.,
 
 73 NY2d 802, 804;
 
 D’Andrea v Long Is. R. R. Co.,
 
 70 NY2d 683,
 
 affg for reasons stated at
 
 117 AD2d 10).
 

 The measure of damages obtainable in a wrongful death action "may be such sum as the jury or, where issues of fact are tried without a jury, the court or referee deems to be fair and just compensation for the pecuniary injuries resulting from the decedent’s death to the persons for whose benefit the action is brought.” (EPTL 5-4.3 [a].) In 1862, 15 years after enactment of the statute, we held that the statutory word
 
 rtpecuniary
 
 was used in distinction to those injuries to the affections and sentiments which arise from the death of relatives, and which, though most painful and grievous to be borne, cannot be measured or recompensed by money. It excludes, also, those losses which result from the deprivation of the society and companionship of relatives, which are equally incapable of being defined by any recognized measure of value.”
 
 (Tilley v Hudson Riv. R. R. Co.,
 
 24 NY 471, 476.)
 

 While other States now permit recovery for loss of society
 
 (Sea-Land Servs. v Gaudet,
 
 414 US 573, 587, n 21 [listing jurisdictions]), New York since its first wrongful death statute has steadfastly restricted recovery to "pecuniary injuries,” or injuries measurable by money, and denied recovery for grief,
 
 *668
 
 loss of society, affection, conjugal fellowship and consortium
 
 (Liff v Schildkrout,
 
 49 NY2d, at 633-634,
 
 supra).
 
 Thus, the essence of the cause of action for wrongful death in this State is that the plaintiffs reasonable expectancy of future assistance or support by the decedent was frustrated by the decedent’s death
 
 (Loetsch v New York City Omnibus Corp.,
 
 291 NY 308, 310-311). Loss of support, voluntary assistance and possible inheritance, as well as medical and funeral expenses incidental to death, are injuries for which damages may be recovered
 
 (Parilis v Feinstein,
 
 49 NY2d 984, 985).
 

 The "pecuniary injuries” caused by a wage earner’s death may be calculated, in part, from factors relevant to the decedent’s earning potential, such as present and future earnings, potential for advancement and probability of means to support heirs, as well as factors pertaining to the decedent’s age, character and condition, and the circumstances of the distributees
 
 (Parilis v Feinstein, supra; Franchell v Sims,
 
 73 AD2d 1, 5-6;
 
 Freeman v Corbin Ave. Bus Co.,
 
 60 AD2d 824, 825;
 
 Kraus v Ford Motor Co.,
 
 55 AD2d 851, 852,
 
 appeal dismissed
 
 42 NY2d 1093;
 
 Lyons v De Vore,
 
 48 AD2d 943, 944,
 
 affd
 
 39 NY2d 971;
 
 Tenczar v Milligan,
 
 47 AD2d 773, 775,
 
 lv denied
 
 36 NY2d 645;
 
 Zaninovich v American Airlines,
 
 26 AD2d 155, 161; Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 5-4.3, at 497-498). In the case of a decedent who was not a wage earner, "pecuniary injuries” may be calculated, in part, from the increased expenditures required to continue the services she provided, as well as the compensable losses of a personal nature, such as loss of guidance
 
 (see, De Long v County of Erie,
 
 60 NY2d 296, 307).
 

 Applying these principles to the facts before us, we first conclude that plaintiffs’ status as adult financially independent grandchildren does not, of itself, preclude their recovery.
 

 While defendant asks us to restrict recovery for loss of guidance to a decedent’s children, the statute defines the class entitled to recover in a wrongful death action as distributees
 
 (see,
 
 EPTL 5-4.1 [1]; 5-4.4 [a]). There is no question that decedent’s grandchildren were her distributees, and thus that they are members of the class the Legislature intended should be permitted to maintain this action (EPTL 5-4.4 [a]; 1-2.5, 4-1.1 [a] [6]; 1-2.10;
 
 see also, Liff v Schildkrout,
 
 49 NY2d, at 634,
 
 supra).
 

 Nor is recovery barred solely because plaintiffs were self-supporting adults at the time of their grandmother’s death.
 
 *669
 
 The argument that an adult distributee cannot state a claim for pecuniary injuries based on the loss of a parent’s guidance was long ago rejected by this court. In
 
 Tilley v Hudson Riv. R. R. Co.
 
 (29 NY 252), a wrongful death action brought on behalf of the decedent’s five surviving children, the oldest child was 23 and married at the time of her mother’s death, and the next oldest 21. We held that the Trial Judge properly declined to limit damages to the minority of the children, finding in the wrongful death statute no "peremptory injunction to confine the damages absolutely to the minority of the children”
 
 (id.,
 
 at 288;
 
 see also, McIntyre v New York Cent. R. R. Co.,
 
 37 NY 287, 295-296 [whether three adult, self-supporting children sustained pecuniary injuries from their mother’s death was a question for the jury];
 
 Countryman v Fonda, Johnstown & Gloversville R. R. Co.,
 
 166 NY 201, 209-210 [whether 25-year-old son and 22-year-old daughter sustained pecuniary injuries from mother’s death was a jury question]; and
 
 Gross v Abraham,
 
 306 NY 525, 529-531 [an adult, self-supporting son who provided a home for his father could recover for the father’s wrongful death]).
 

 Defendant points to
 
 Bumpurs v New York City Hous. Auth.
 
 (139 AD2d 438) as support for its contention that adults cannot claim pecuniary injuries from loss of a parent’s guidance. There, adult children were denied recovery for loss of their mother’s "companionship, comfort and assistance” on the ground that such injuries were not pecuniary in nature, citing
 
 Liff v Schildkrout;
 
 the court went on to note that the adult claimants could not state a claim for loss of their mother’s nurture. However, the
 
 Bumpurs
 
 decision was properly distinguished by the Appellate Division in the present case: unlike the decedent here, the decedent in
 
 Bumpurs
 
 had provided no services to her adult children (161 AD2d, at 359;
 
 see also, Hartman v Dermont,
 
 89 AD2d 807 [no proof of pecuniary injury]).
 

 Plaintiffs’ status being no bar to recovery, the question then becomes whether the damages they have shown fall within the statutory confines of "pecuniary injuries.”
 

 Defendant urges that the only service decedent rendered to plaintiffs was the preparation of occasional meals outside their residences, which was not a compensable injury both because it was occasional and gratuitous and the plaintiffs therefore had no reason to rely on it, and because the service was not performed in their own households and plaintiffs therefore would not need to replace it.
 

 
 *670
 
 As the record establishes, however, decedent contributed far more than "occasional meals,” and her grandchildren relied upon her contributions. Decedent provided shelter for her granddaughter during a marital crisis, and helped both grandchildren cope with their mother’s condition. The child care plan was more than occasional. Even the meals she furnished cannot accurately be called occasional — Marta Gonzalez testified that she ate dinner with her mother and grandmother every other day, while Antonio Freire testified that he visited his grandmother every other day and she frequently prepared his meals.
 

 Nor is it significant that the decedent prepared meals in her daughter-in-law’s home rather than in plaintiffs’ homes. Wherever provided, the decedent’s services would have to be replaced by plaintiffs. The same is equally true of her counseling, the shelter she provided for her granddaughter, and the meals she regularly prepared for both grandchildren.
 

 Based upon this record, therefore, we conclude that plaintiffs presented evidence of "pecuniary injuries” they suffered by reason of their grandmother’s wrongful death.
 

 III.
 

 Defendant’s remaining argument is addressed to the award of damages for decedent’s conscious pain and suffering. Defendant contends that there was no showing that it was more likely than not that she suffered any pain before she died, because two of the causes of death noted by the medical examiner — contusion of the scalp and fracture of the cervical spine — were equally consistent with a simultaneous loss of consciousness and death.
 

 We agree with the Appellate Division that there was sufficient circumstantial evidence to support the conclusion that decedent was conscious when most of the injuries were inflicted. As the Appellate Division noted, if she had been unconscious at the outset of the assault there would have been no reason for the murderer to have bound and gagged her elaborately and injured her as he did. Defendant’s speculation that those other injuries might have been caused by a fall, or that they might have caused immediate unconsciousness, finds no support in the medical testimony or anywhere else in the record.
 

 
 *671
 
 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order affirmed, with costs.
 

 *
 

 Marta Gonzalez brought this action individually and as her grandmother’s administratrix. Her brother, Antonio Freire, is not a named plaintiff, but for ease of reference both grandchildren are called "plaintiffs.”