Marjorie DATSKOW, Executrix of the Estates of Robert C. Gross and Susan C. Gross, deceased, and Administratrix of the Estates of Michael and David Gross, deceased, and Grossair, Inc., Plaintiffs,

v.

TELEDYNE CONTINENTAL MOTORS AIRCRAFT PRODUCTS, A DIVISION OF TELEDYNE INDUSTRIES, INC., Defendant.

Civ. No. 88–1299L.

United States District Court, W.D. New York.

April 1, 1992.

Michael J. Townsend, Davidson, Fink, Cook & Gates, Rochester, NY, Catherine B. Slavin, Wolk, Genter & Harrington, Philadelphia, PA, for plaintiffs.

Stephen R. Stegich, III, Condon & Forsyth, New York City, George G. Mackey, Saperston & Day, P.C., Rochester, NY, for defendant.

## DECISION AND ORDER

### BACKGROUND

LARIMER, District Judge.

This tort action arises out of a November 26, 1986, airplane crash in North Carolina in which four members of the Robert C. Gross family, all New York residents, died. Plaintiffs allege that the crash was caused by the failure of an aircraft engine designed and manufactured by defendant Teledyne Continental Motors Aircraft Products ("TCM").

The amended complaint contains four wrongful death and survival claims sounding in negligence, strict liability, breach of warranty, and "willful or wanton misconduct, gross negligence and fraud." The wrongful death claims are brought on behalf of decedents' distributees, Marjorie Datskow (the sister of decedent Robert Gross) and Juletta Cook (the mother of decedent Susan Gross), who are residents of Pennsylvania and New York respectively.[1] The complaint alleges various losses, including funeral expenses and loss of care, comfort, earnings, aid, etc. There is also a property damage cause of action by plaintiff Grossair, Inc. ("Grossair"), the owner of the airplane involved.

TCM has moved for partial summary judgment dismissing the wrongful death claims. TCM argues that under the New York wrongful death statute, E.P.T.L. § 5-4.3, recovery for distributees is limited to pecuniary injuries. TCM contends that the record proves that plaintiffs did not suffer any pecuniary loss from decedents' deaths.

In response, plaintiffs claim that North Carolina law should govern because the accident occurred there, and, according to plaintiffs, North Carolina law permits recovery of non-pecuniary damages in a wrongful death action.

Plaintiffs also contend that under either New York or North Carolina law, TCM is not entitled to summary judgment. Plaintiffs dispute TCM's claims that there is no evidence of pecuniary loss, and argue that the issue of damages should go to the jury.

### DISCUSSION

*1. Choice of Law*

The first issue that the court must address is the choice of law. As stated, plaintiffs contend that North Carolina law should apply. TCM argues in favor of New York law.

At the outset, I note that until the motion under consideration was filed, plaintiffs have consistently prosecuted this as an action under New York's wrongful death and survival statutes. *See* Complaint ¶ 15; Catherine B. Slavin Aff., 8/17/89 ¶ 4; Plaintiffs' Brief in Opposition to Petition for Writ of Certiorari p. 4. Only now, when faced with a motion for partial summary judgment based on New York law, have plaintiffs raised a claim that North Carolina law should apply.

---

**1.** Cook is not a plaintiff, but Datskow, as executrix and administratrix of the decedents' estates, brings the wrongful death actions both on her own behalf and on behalf of Cook. For the sake of convenience, however, they will be referred to jointly as "plaintiffs."

Defendant argues that plaintiffs' prior election of a remedy under New York statutes establishes New York law as the law of the case, and that plaintiffs should be estopped from asserting the application of North Carolina law. I need not base my decision on defendant's estoppel theory, however, because I find that under New York's choice-of-law rules, New York law should govern this action.

■ A district court in a diversity case must follow the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). My decision, then, depends upon New York's choice-of-law analysis.

■ As the Second Circuit explained in *Barkanic v. General Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d 957 (2d Cir.1991), the rules governing the choice-of-law in New York have undergone an evolution in recent years, moving from a rigid rule of *lex loci delicti* to an analysis based on the relative interests of the jurisdictions involved. *Id.* at 961–63; *see also Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985).

The current rule in New York arises from the New York Court of Appeals' decision in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), which set forth certain general rules for choice-of-law analysis. Although *Neumeier* involved the applicability of Ontario's "guest statute" to an automobile accident involving an Ontario passenger and a New York driver, the court in *Barkanic* stated that it believed that the Court of Appeals now considers the *Neumeier* factors applicable "to *all* post-accident loss distribution rules, including rules that limit damages in wrongful death cases." *Barkanic*, 923 F.2d at 963.

■ Employing the *Neumeier* analysis, then, I must consider the following three elements: the domicile of the plaintiff; the domicile of the defendant; and the place of the accident. When more than one of these is located in the same state, that state's

law should ordinarily control. For example, if both parties are domiciled in the same state, that state's law will apply, regardless of where the accident occurred. If one of the parties is domiciled in the state where the accident happened, then that state provides the applicable law.

The instant case, however, falls under the third *Neumeier* scenario, in which the opposing parties are domiciled in different states, and the accident occurred in a third state. In this situation, the *Neumeier* court stated,

> the rule is necessarily less categorical. Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454.

Summarizing the *Neumeier* rule, the *Barkanic* court stated that courts should "apply the law of the place of the accident unless the plaintiff and defendant were domiciliaries of the same state." 923 F.2d at 962. *Barkanic*, however, involved an accident which occurred in the domicile of the defendant. Thus, the case fell under the second *Neumeier* rule, which, as the Second Circuit noted, "unlike the third rule, ... [is] phrased in non-discretionary terms, which unambiguously call for application of locus law." 923 F.2d at 962 n. 5.

■ The instant case, in contrast, involves a North Carolina accident, a California defendant, New York decedents, and a Pennsylvania plaintiff.[2] In this situation, the court may apply New York law if doing so "will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Neumeier*, 31 N.Y.2d at 138, 335 N.Y.S.2d 64, 286 N.E.2d 454.

I find that the factors present in this case mandate the application of New York,

---

**2.** The domicile of Grossair (a now-defunct corporation formerly incorporated under the laws of Virginia) is not relevant, since it is not a party to the wrongful death claims.

not North Carolina, law. Although the location of the accident is usually a major consideration, under the facts of this case its significance is relatively minor. North Carolina's chief interest in this case is in maintaining the safety of its skies. The conflicting laws here, however, relate not to that interest, but to the recoverability of certain types of damages. When the conflicting rules involve the allocation of loss rather than the regulation of conduct, "the locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy ..." *Schultz*, 65 N.Y.2d at 198, 491 N.Y.S.2d 90, 480 N.E.2d 679.

Moreover, although the *crash* occurred in North Carolina, the actual *tort*, if any, did not. The crash was not the tort; the tort was the construction of the allegedly defective engine and the other acts of defendant which allegedly caused the crash, all of which occurred outside North Carolina. A strict application to this case of *Neumeier's* rules concerning "the state where the accident occurred" is therefore not appropriate, since the court in *Neumeier* was discussing an automobile accident, which occurred in the same time and place as the tortious activity, *i.e.*, the negligent driving.

There is little reason, then, why this action should be governed by the law of North Carolina, other than "the purely adventitious circumstance that the accident occurred there." *Babcock v. Jackson*, 12 N.Y.2d 473, 482, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). New York, on the other hand, clearly has ties to the case which implicate its interests and favor the application of New York law. The case involves an alleged tort which caused the deaths of New York residents while they were en route to New York. In addition, decedents' estates are located in New York, and one of the two beneficiaries of the Gross' estates (Cook) is a New York resident. In these circumstances, it is clear to me that New York has a much greater interest in this proceeding than North Carolina concerning the extent of recovery for the alleged tort, particularly since North Carolina is neither the domicile of any of the interested or affected parties nor the locus of the alleged tort.

I find, therefore, that application of New York law here "would further that State's interest in enforcing the decision of its domiciliaries [in this case, the decedents] to accept the burdens as well as the benefits of that State's loss-distribution tort rules," and that it would not frustrate North Carolina's interests because North Carolina "has no significant interest in applying its own law to this dispute." *Schultz*, 65 N.Y.2d at 202, 491 N.Y.S.2d 90, 480 N.E.2d 679. Finally, application of New York law is consistent with the reasonable expectations of the parties, especially now, after plaintiffs have proceeded for years under New York law. *Id.*

### 2. Damages on the Wrongful Death Claims

Under § 5–4.3(a) of the New York Estates, Powers and Trusts Law, damages in a wrongful death action are limited to the amount that the factfinder "deems to be fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought." The statute also provides for recovery of certain enumerated special damages, e.g., medical and funeral expenses.

In a line of cases dating back to 1862, New York courts have held consistently that injuries recoverable under § 5–4.3(a) are limited to pecuniary injuries and that they do not include "losses which result from the deprivation of the society and companionship of relatives ..." *Tilley v. Hudson River R.R. Co.*, 24 N.Y. 471, 476 (1862). The New York Court of Appeals recently reaffirmed that rule in *Gonzalez v. New York City Housing Authority*, 77 N.Y.2d 663, 569 N.Y.S.2d 915, 572 N.E.2d 598 (1991), stating that New York does not allow "recovery for grief, loss of society, affection, conjugal fellowship and consortium." *Id.* at 667–68, 569 N.Y.S.2d 915, 572 N.E.2d 598.

What pecuniary injuries do include, then, are those that involve "the plaintiff's reasonable expectancy of future assistance or support by the decedent." *Id.* at 668, 569

N.Y.S.2d 915, 572 N.E.2d 598. These include such elements as "[l]oss of support, voluntary assistance and possible inheritance, as well as medical and funeral expenses incidental to death ..." *Id.*

■ In the case at bar, plaintiffs concede that if New York law governs the case, damages for loss of consortium and administration expenses are not recoverable. However, they contend that there is enough evidence of a reasonable expectation of pecuniary loss arising from decedents' deaths to allow the wrongful death claims to go to a jury. Specifically, plaintiffs maintain that there was a loss of prospective inheritance since they were contingent beneficiaries under decedents' wills. They also argue that there are questions of fact concerning the guidance and services provided to them by the decedents.

With respect to plaintiffs' expected inheritance, Cook and Datskow were both listed as residuary beneficiaries under the wills of Robert and Susan Gross. Robert Gross's will provided that Cook would take fifty percent of the estate in the event that his wife Susan, and their son Michael predeceased Robert leaving no issue. Susan Gross's will contained a similar provision based on Robert and Michael predeceasing Susan. Each will also provided that Datskow would take fifty percent of the estate under the same contingencies as Cook, but with the added requirement that either Cook or Rose Gross (Robert's mother) must have predeceased the testator.

Actually, Datskow and Cook did each receive half of the estates. Their loss of inheritance claim is premised on the argument that, had decedents not been killed, the estates would have grown larger because Robert and Susan Gross would have continued to earn money, and, so the argument goes, they stood a change to recover more from the estate in the future, assuming that all the contingencies to their taking were fulfilled.

To recover on their wrongful death claims, plaintiffs must present an evidentiary basis for a reasonable expectation of pecuniary loss from decedents' death.

*Public Administrator of Kings County v. U.S. Fleet Leasing of New York, Inc.*, 159 A.D.2d 331, 332, 552 N.Y.S.2d 608 (1990). I find that plaintiffs have not done so. Plaintiffs' claims are too speculative.

■ Damages for wrongful death are not recoverable when they are based on contingencies which are "uncertain, dependent on future changeable events and, thus, inherently speculative." *Farrar v. Brooklyn Union Gas Co.*, 73 N.Y.2d 802, 804, 537 N.Y.S.2d 26, 533 N.E.2d 1055 (1988). The court in *Farrar* held that a wrongful death plaintiff could not recover for loss of inheritance resulting from the loss of a federal estate tax credit on the theory that had the decedent lived until 1987 instead of dying in 1982, the estate would have realized the full benefit of the credit, and no federal estate tax would have been paid. The court in *Farrar* stated that the plaintiff sought recovery "of an inchoate [tax credit] which decedent may have earned in the future assuming at least these key factors remained the same—the amount and assets of the estate, the decedent's tax status, and the tax law itself ... Such a loss is not compensable." *Id.* at 804, 537 N.Y.S.2d 26, 533 N.E.2d 1055.

The case at bar presents a similar situation. Plaintiffs' claim rests on the assumption that a number of things would have happened but for the plane crash: the assets of decedents' estates would have increased; the testators would have been predeceased by their spouses and by their child; and perhaps most importantly, decedents would all have predeceased plaintiffs.

Such contingencies are simply too speculative to support a claim for damages. Had the crash not occurred, the Gross' estates may well have increased, but by the same token, it would have become far less likely that Datskow and Cook ever would have taken *any*thing under the wills. In the natural course of events, the estates would have passed not to them, but to the decedent's surviving spouse or their child, Michael Gross, or his issue.[3]

This case, then, is distinguishable from those involving claims based on a child's

---

**3.** Michael was eight years old at the time of the crash. Had decedents' lives not been cut pre- maturely short, he could well have had issue by the time of his parents' deaths.

loss of prospective inheritance from his parent, since it is not unreasonable to expect even a young child someday to inherit his parent's estate. For example, in *Zaninovich v. American Airlines*, 26 A.D.2d 155, 271 N.Y.S.2d 866 (1966), a wrongful death action arising out of the deaths of a husband and wife, 29 and 28 years old respectively, who left behind four children ranging from 7 months to 7 years old, the court held that losses "from frustrated expectations of inheritance ... are entitled to some evaluation." *Id.* at 161, 271 N.Y.S.2d 866.

Significantly, however, the court in *Zaninovich* added that both the children and parents were so young that the expectations of inheritance were "almost ephemeral," and that "as to such losses, with people as young as these who died here, at the start of their careers, the contingencies for the far future become extremely great and require an *all but total discounting* of the suggested expectations." *Id.* at 160–61, 271 N.Y.S.2d 866 (emphasis added).

Even though children ordinarily inherit from their parents, then, the court in *Zaninovich* clearly indicated that the case was on the borderline between recoverable and nonrecoverable damages. I believe that the case at bar crosses that line. It not only involves expectations of events far in the future, as in *Zaninovich*, but adds the unlikely contingencies that Michael Gross would have predeceased not only his parents but plaintiffs as well, leaving no issue. In my view, that combination of "uncertain, ... future changeable events" makes the alleged losses "inherently speculative," and therefore noncompensable. *Farrar*, 73 N.Y.2d at 804, 537 N.Y.S.2d 26, 533 N.E.2d 1055.

Regarding damages for other elements of pecuniary loss, such as loss of support and voluntary assistance, defendant contends that the record shows that the only services performed by decedents for plaintiffs' benefit were so occasional that they are not compensable.

On these damages, I grant defendant's motion insofar as it relates to Datskow, but deny it as to Cook. Plaintiffs have not pointed to any evidence of support or services that Datskow reasonably expected to receive from decedents, other than residuary benefits under their wills.

Datskow's affidavit in opposition to the motion focuses on the emotional bonds between her and decedents; she states, for example, that Robert and Susan Gross often spent time together, and that they were her "soul mates" and "above all, [her] friends." While I do not doubt or minimize Datskow's feelings for her brother and his family, New York law is clear that her loss in this regard is not compensable in a wrongful death action. *Gonzalez*, 77 N.Y.S.2d 663, 569 N.Y.S.2d 915, 572 N.E.2d 598.

In addition, plaintiffs have not shown either in their answers to interrogatories or in deposition testimony any basis for finding that Datskow suffered pecuniary injury. Plaintiffs virtually concede as much, since their arguments concerning Datskow focus almost exclusively on her inheritance claim, and their contentions concerning other types of loss are limited almost entirely to Cook.

Plaintiffs contend that at Datskow's deposition, defense counsel failed to follow up questions about whether Datskow had been dependent upon decedents for support, which Datskow answered in the negative.[4] A mere omission to ask a given question, however, is hardly enough to overcome defendant's specific allegations that there are no genuine issues of material fact on this claim. In the face of an otherwise valid summary judgment motion, plaintiffs must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990).

---

**4.** Plaintiffs' memorandum states that the specific question that was not "followed up" was whether decedents had provided Datskow with "any services," which plaintiffs describe as "broad and generic." However, the Court has been unable to find that question in the transcript, either on the page cited or anywhere else. The page which is cited, page 40, does contain questions concerning gifts, income, and support, but not "any services."

Not only have plaintiffs failed to make such a showing, but the admissions that they have made show that Datskow did not suffer any pecuniary injury in the form of loss of support or services. Plaintiffs' interrogatory answers simply offer no assertions in this regard; *see* Stegich Aff. Ex. D. In addition, Datskow admitted at her deposition that except for holiday gifts, she never "receive[d] any kind of monetary gifts, money or anything like that from Robert or Susan" Gross, and that after becoming married, she was never "dependent on them for any kind of income or support." Datskow Depos. p. 40.

As to Cook's claims, however, I find that fact questions do exist which should await trial. Although defendant makes much of Cook's allegedly good health and the fact that her daughter had no legal obligation to support her, the fact remains that she was 77 years old at the time of the crash, and a jury could find that she had a "reasonable expectancy of future assistance or support by the decedent." *Gonzalez*, 77 N.Y.2d at 668, 569 N.Y.S.2d 915, 572 N.E.2d 598.[5] There is also evidence that Susan Gross performed some services for Cook, including help with Cook's income tax returns, and financial advice. In my view, such services could be viewed as compensable "voluntary assistance," *id.*, and cannot be said as a matter of law to be insufficient to support Cook's claim. "Where parents are the plaintiff beneficiaries the pecuniary injuries include loss of their child's services, not limited to the decedent's minority." *Franchell v. Sims*, 73 A.D.2d 1, 5, 424 N.Y.S.2d 959 (1980). Although defendant argues that these services were too infrequent to be compensable, that is a question of the weight of the evidence which should be left to the jury. "[C]alculation of pecuniary loss is a matter resting squarely within the province of the jury." *Parilis v. Feinstein*, 49 N.Y.2d 984, 985, 429 N.Y.S.2d 165, 406 N.E.2d 1059 (1980).

I also grant defendant's motion to dismiss the wrongful death claims for funeral expenses. To some extent, this is a moot point, since defendant concedes that plaintiffs can pursue this claim in the survival action. Since it is uncontradicted that the funeral expenses were paid for out of Robert Gross's estate, however, and not by plaintiffs, they are not recoverable on the wrongful death claim. E.P.T.L. § 5–4.3(a).

Finally, defendant's motion to dismiss the claim for medical expenses is denied. Plaintiffs contend that there was an ambulance bill of several hundred dollars, and such expenses, if proved, are compensable. *Id.*

## CONCLUSION

Defendant's motion for partial summary judgment is granted in part, and plaintiffs' wrongful death claims are dismissed except as to the claims for damages for pecuniary losses on the part of Juletta Cook, and their claims for medical expenses. As to those damages, defendant's motion is denied.

IT IS SO ORDERED.

---

5. Defendant notes that Cook stated at her deposition that "[she did]n't intend to move" from her Long Island home, hundreds of miles from the Gross's home near Rochester. Her lack of such an intention, however, need not be interpreted as a refusal to move should her health or other circumstances require it.