*818 OPINION OF THE COURT
David Demarest, J.
This wrongful death action arises out of the death of a 14-month-old infant, in a St. Petersburg, Florida hospital during a surgical procedure utilizing a "Tyshak Balloon Dilation Catheter” (Tyshak catheter) manufactured by NuMed, Inc. (Defendant or NuMed). Plaintiff, as personal representative of Amber Julie Monroe’s estate, seeks damages for "the mental and emotional pain and suffering of John and Lynne Monroe, as a result of the death of Amber Julie Monroe, for each of their life expectancies.” (Complaint 19.)
Although these damages are recoverable in Florida, they are not in New York. (EPTL 5-4.3.) Accordingly, Defendant moves for dismissal of all claims for nonpecuniary loss pursuant to New York CPLR 3212. Plaintiff opposes the summary judgment motion and cross-moves to compel the deposition of Alan J. Tower, the sole shareholder of Defendant. At issue is what law should be applied, Florida or New York. Upon consideration of the parties’ submissions the court renders the following decision and order.
It is uncontroverted that: plaintiff and her decedent were, at all times relevant, domiciliaries of the State of Florida; the operation, utilization of the Tyshak catheter, and death all occurred in Florida; the Defendant is a New York corporation having one business location, in Nicholville, New York; NuMed manufactures and sells the "Tyshak Dilation Balloon Catheter” in New York;[1] they are shipped to B. Braun Medical (Braun) in the State of Minnesota; and Braun, in turn, markets and distributes the device throughout the United States. This being a products liability case, the tort is alleged to have been the defective manufacture of the Tyshak catheter.
By way of background, plaintiff previously commenced a wrongful death lawsuit in Pinellas County, Florida, against the doctor who performed the operation and the hospital at which the death occurred.[2] In an opinion dated March 8, 1995, the Circuit Court Judge dismissed the complaint as against NuMed for lack of personal jurisdiction. The decision was later upheld on appeal, prompting this New York lawsuit.
*819 Defendant contends this court must give the decision of the Florida court collateral estoppel effect with respect to its "certain factual findings”. (Muldowney letter, Mar. 14, 1997, 2.) It is plaintiff’s position the Florida court record did not include the testimony of Alan J. Tower making collateral estoppel improper. However, Defendant has provided the court with a portion of the appellate brief evidencing the testimony of Alan J. Tower was, indeed, considered by the District Court of Appeals, Second District, State of Florida. It is also clear the deposition testimony was elicited for purposes of the then-pending dismissal motion on jurisdictional grounds. The court will, therefore, give the factual findings of the Florida court collateral estoppel effect. Of course, the Florida court’s factual inquiry and findings were limited to the issue of personal jurisdiction; whereas, this court’s inquiry as to choice of law is governed by different principles.
In any event, the court finds Defendant’s February 21, 1995 deposition testimony of Alan J. Tower to be consistent with the findings of the Circuit Court Judge.[3] Plaintiff argues Tower’s response to interrogatories contradicts[4] earlier testimony by ascribing a hypertechnical definition to the term "delivered”. Plaintiff would require the term to mean Defendant’s physical exportation of the product out of State to Minnesota with title passing in Minnesota. Such a limitation is unnecessary and without factual support.
Notably, the principles enunciated in Defendant’s memorandum of law surrounding "choice of law” in products liability/ wrongful death actions are unchallenged by plaintiff. In deciding this choice of law issue the court must analyze the "grouping of contacts” or "center of gravity” theories enunciated in Auten v Auten (308 NY 155, 160 [1954]), applied in the seminal case of Babcock v Jackson (12 NY2d 473 [1963]), further refined by Schultz v Boy Scouts (65 NY2d 189 [1985]), and look to the rules set down by the Court of Appeals in Neumeier v Kuehner (31 NY2d 121 [1972]), recently reexamined and applied to a products liability case by that Court in Cooney v Osgood Mach. (81 NY2d 66 [1993]).
*820 The issue is not a conflict between Florida and New York’s laws regulating primary care, but rather loss allocation. Similar to Cooney (supra) neither the Defendant nor plaintiff share a common domicile. Further, the local law of each litigant favors the respective domiciliary;[5] the States’ interests are, therefore, irreconcilable. A strict application of Neumeier (supra) requires the place of the injury to govern as it has been coined the "neutral factor that favors neither the forum’s law nor its domiciliaries.” (Cooney v Osgood Mach., supra, at 76.) The rationale behind utilization of this factor is that it is "the place with which both parties have voluntarily associated themselves.” (Cooney v Osgood Mach., at 77.)
In products liability cases, however, application of this factor may be inappropriate if the place of the injury is not a place where the manufacturer defendant voluntarily associated itself, and is especially true where the manufacturer was not in the business of distributing its product to the place of injury. (Cooney v Osgood Mach., supra.) Recognizing this fact, the Court of Appeals in Cooney decided to analyze another factor in the products liability case before it: "the protection of reasonable expectations”. (Supra, at 77; citations omitted.)
In Cooney (supra), a personal injury case claiming products liability, the Court was persuaded that the offending machine wound up in the State of Missouri through no effort or knowledge of the defendant distributor since it was not in the business of national distribution, but rather limited its activities to New York and parts of Pennsylvania. Here, however, NuMed sold Tyshak catheters to Braun, which "has the exclusive rights to [them] in the United States.” (Alan J. Tower deposition, Feb. 21, 1995, at 24, lines 1-2; also see, id., at 14, lines 10-15.) Further, Defendant knew Braun could sell the device in Florida; that it was possible the product could be consumed in Florida; no restrictions on sales of the product to Florida existed; and world-wide distribution could result in "some of these catheters * * * go[ing] anywhere in the world.” (Alan J. Tower deposition, Feb. 21, 1995, at 24, lines 3-9; at 34, lines 4-7, 12-14.) Although NuMed does not have a sales force, the company intended to sell its product to a company that had direct distribution for consumption "over the entire world.” (Alan J. Tower deposition, Feb. 21, 1995, at 58, lines 16-20.)
*821 Defendant cites Datskow v Teledyne Cont. Motors Aircraft Prods. (807 F Supp 941 [WD NY 1992]), urging the court to apply New York law. Datskow, a wrongful death case claiming products liability arising out of a plane crash, held, in accord with Schultz, the "locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy” (Schultz v Boy Scouts, supra, at 198) when two States’ laws conflict on the issue of loss allocation, as opposed to conduct regulation. Datskow (at 944) held that although the crash occurred in North Carolina, the alleged tort (construction of an allegedly defective engine) did not, and application of North Carolina law on the " 'purely adventitious circumstance that the accident occurred there’ ” would be inappropriate. It should be noted that no party in Datskow was a North Carolina resident, nor were the decedents. Further, no party or decedent at any time purposely did anything to affiliate him/ herself with North Carolina. Their contact with North Carolina was purely coincidental. Accordingly, the court finds the facts of Datskow to be inapposite.
Viewing Defendant’s actions and contacts with Florida together, NuMed’s reasonable expectations should not preclude the possibility of it responding in damages, consistent with Florida law, for a Florida domiciliary’s death occurring in a Florida hospital arising from the use of its product in Florida.
Upon concluding that under choice of law principles the applicable substantive law is not the forum’s law, the public policy exception should be considered, but only applied when New York’s nexus with the case is substantial enough to threaten our public policy. (Schultz v Boy Scouts, supra, at 202.) It is incumbent on Defendant to establish enough important contacts between the parties, the occurrence and the New York forum to implicate our public policy. Defendant’s burden in this regard is heavy.
This is not a situation of a New York domiciliary being potentially cast in liability by the effect of foreign law contrary to New York law, but rather being responsible for damages which are not recoverable for wrongful death under New York law. Chief Judge Kaye noted that:
"not every difference between foreign and New York law threatens our public policy * * *
"[i]n view of modern choice of law doctrine, resort to the public policy exception should be reserved for those foreign laws that are truly obnoxious.” (Cooney v Osgood Mach., 81 NY2d 66, 79, supra) *822 In fact, the existence of conflicting legislation between two States " 'is not enough to show that public policy forbids us to enforce the foreign right * * * We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home.’ ” (Supra, at 80, citing Loucks v Standard Oil Co., 224 NY 99, 110-111 [1918] [Cardozo, J.].)
Defendant argues New York’s long history establishing public policy relating to wrongful death actions, consisting of constitutional, statutory, and case law citations, permits invocation of the public policy exception in the case at bar. Although the New York Constitution protects against abrogation of wrongful death recoveries or limitations thereon (art I, § 16), the New York EPTL limits the permissible measure of damages to pecuniary loss. The court is not persuaded Defendant has established that enforcement of Florida law " 'would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal’ ” (Schultz v Boy Scouts, 65 NY2d 189, 202, supra) expressed in the State’s Constitution, statutes, and judicial decisions.
In this vein, Defendant’s citation of Feldman v Acapulco Princess Hotel (137 Misc 2d 878 [Sup Ct, NY County 1987]) is not dispositive of the issue in its favor. In Feldman, the court declined to invoke the public policy exception where Mexican law limited plaintiffs recovery for his permanent disability and pain and suffering. The court cited the availability of traveler’s and medical insurance (obviating New York’s interest in recompensing its medical providers and avoiding the effects of its residents becoming public charges) and plaintiffs voluntary decision to travel. Whereas Mexico’s paramount interest consisted of developing the tourism industry and providing certainty to the commercial and resort entities within its borders which might be subjected to lawsuits in foreign jurisdictions, arguably permitting recoveries well in excess of that available to a Mexican national.
Defendant argues plaintiffs settlement of the lawsuit in Florida, coupled with the ability to seek pecuniary damages in this New York lawsuit, satisfies any interest Florida may have in applying its law to provide recovery to its residents. Whereas, New York’s interest in regulating the economic and business interests of those who choose to establish businesses within its borders and protect them from exposure to varying laws from a multitude of jurisdictions with which they have insignificant contact mandate application of New York law. The interests of *823 New York in limiting wrongful death recovery to pecuniary damages is based on its statutes and the New York Court of Appeals subsequent construction, that recovery for deprivation of the society and companionship and the loss of affections and sentiments would permit speculation since recovery for such items are " 'incapable of being defined by any recognized measure of value.’ ” (Gonzalez v New York City Hous. Auth., 77 NY2d 663, 667 [1991], citing Tilley v Hudson Riv. R. R. Co., 24 NY 471, 476 [1862].)
Although New York restricts recovery to "pecuniary injuries”, those capable of measurement in dollars, many other States permit recovery for grief, loss of society, affection, conjugal fellowship and consortium. Certainly, these laws, albeit in conflict with New York’s laws, are not "truly obnoxious.” Conflicting legislation should not be cast aside simply because it permits a different recovery. Defendant has not fulfilled its burden to invoke public policy and avoid the effects of Florida law.
Defendant’s motion to dismiss is denied and Florida law shall apply.

. Mr. Tower testified that B. Braun Medical is the "exclusive party that I sell the Tyshaks to here in the United States.” (Alan J. Tower deposition, Feb. 21, 1995, at 14, lines 14-15.)

. Braun Medical settled out of the Florida action upon payment of $445,000, and the Florida action was voluntarily dismissed with prejudice upon plaintiff’s motion.

. Defendant testified: "I sell my products — I sell my products here, in New York state.” Similarly, the Sixth Judicial Circuit Court in Pinellas County, Florida, held: "Defendant NuMed, Inc. sells its product that is the subject of this action to B. Braun Medical, Inc. in New York. B. Braun Medical, Inc. transports the subject product to Minnesota. I ship them to B. Braun in Minnesota”.

. "Numed Delivered its product to B. Braun Medical, Inc.”

. Florida law permits recovery for loss associated with the deprivation of the society and companionship of relatives. Whereas New York law limits wrongful death recovery to compensation for pecuniary injuries.