[833 NYS2d 566]

Seth Rubenstein, P.C., Respondent-Appellant, v Cynthia Ganea, Appellant-Respondent.

Second Department, April 3, 2007

## APPEARANCES OF COUNSEL

*Healy & Baillie, LLP*, New York City (*Alan C. Trachtman* of counsel), for appellant-respondent.

*Seth Rubenstein, P.C.*, Brooklyn (*Nora S. Anderson* of counsel), respondent-appellant pro se.

**OPINION OF THE COURT**

Dillon, J.

On this appeal and cross appeal we are presented with two issues that have not previously been addressed at the appellate level. First, we are asked to address the question of whether an attorney who fails to obtain a written retainer agreement or letter of engagement with a nonmatrimonial client, in violation of 22 NYCRR 1215.1, may nevertheless recover the reasonable value of professional services rendered on a quantum meruit basis. Published decisions on this issue from the Supreme, Surrogate, and Civil Courts have reached well-reasoned but conflicting conclusions. Second, we address the issue of whether an attorney who was awarded fees in a guardianship proceeding from the allegedly incapacitated person pursuant to Mental Hygiene Law § 81.16 (f) is barred by res judicata from recovering additional fees from the client who sought the appointment of the guardian. Under the circumstances of this action, we answer the first question in the affirmative and the second question in the negative.

I. Relevant Facts and Proceedings

The defendant, Cynthia Ganea (hereinafter Ganea), retained the plaintiff, Seth Rubenstein, P.C. (hereinafter Rubenstein), on April 23, 2002, to represent her in a proceeding for her appointment as guardian for her husband, Dinu Andre Ganea, under Mental Hygiene Law article 81. Terms were agreed upon that Rubenstein would be compensated at a rate of either $450 or $325 per hour, depending on the identity of the attorney performing the work, plus disbursements.[1]

The parties also agreed that Rubenstein's attorneys' fees would be reduced by any amount awarded by the judge in the guardianship proceeding paid from the estate of the allegedly incapacitated person, Dinu Andre Ganea (hereinafter the AIP). It is undisputed that no written retainer agreement or letter of engagement was prepared or executed, notwithstanding that several weeks earlier, 22 NYCRR 1215.1 became effective. That rule requires the execution of engagement letters explaining the scope of services, fees, and billing practices, and the right to arbitration. Rubenstein then commenced an action on Ganea's behalf entitled *In the Matter of the Application of Cynthia Ga-*

---

1. The plaintiff's complaint alleges that the work of attorney Nora S. Anderson would be billed at a rate of $375 per hour, but an affidavit of Seth Rubenstein dated March 16, 2005, and billing statements from the law firm, indicate that Anderson's time was charged at $325 per hour.

*nea for the Appointment of a Guardian for Dinu Andre Ganea, an Alleged Incapacitated Person* (Sup Ct, Kings County, Index No. 100149/02) (hereinafter the guardianship proceeding).

Legal fees were incurred in the sum of $65,954.15, plus unreimbursed expenses of $398.66. Of that amount, the sum of $58,212.50 was incurred as legal fees in the guardianship proceeding, plus unpaid disbursements in the sum of $337.35. The balance of fees and disbursements were generated in connection with ancillary legal matters Rubenstein performed for Ganea outside the scope of the guardianship proceeding.[2] In April 2003, Rubenstein applied to the guardianship court for an award of $58,549.85 in attorneys' fees and disbursements. Several factors contributed to greater than anticipated attorneys' fees. Those factors included the animosity during the course of the proceeding between Ganea and the AIP's adopted daughter, Sandra, the conduct of hearings at the AIP's nursing home which posed scheduling difficulties, and the need to retain a psychiatrist to refute allegations that Ganea was unfit to serve as a guardian and to testify as to the AIP's incapacity.

In an order dated September 15, 2003, the Supreme Court, Kings County (Hall, J.), appointed the AIP's daughter, Sandra, as guardian for the AIP, and awarded Rubenstein counsel fees in the sum of $18,375 to be paid from the AIP's estate.[3]

Rubenstein credited Ganea's bill with the $18,375 awarded by the Supreme Court. By invoice dated October 15, 2003, Rubenstein sought payment from Ganea for the balance of all remaining legal services and disbursements in the net sum of $47,977.81. Ganea refused to pay the invoiced balance on the ground that the $18,375 award of attorneys' fees in the guardianship proceeding represented full payment for those services. Ganea discharged Rubenstein and retained new counsel. Rubenstein sought to resolve the parties' fee dispute by sug-

---

2. Rubenstein represented Ganea after she had a physical altercation with the AIP's adopted daughter, Sandra, which resulted in three Family Court proceedings in Westchester County and Kings County. Ganea also had a physical confrontation with the AIP's son-in-law, who accused her of harassment, and a confrontation where she threatened a tenant with a gun, resulting in her arrest. The incident with the gun ultimately caused Ganea to withdraw her petition to be appointed guardian of the AIP, though she continued to oppose Sandra's appointment as guardian. Rubenstein represented Ganea in the harassment and tenant matters as well.

3. The same order directed the AIP's estate to pay the sum of $22,793 to the attorney court evaluator, the sum of $11,488 to the attorney appointed to represent the AIP, and the sum of $12,539 to the attorney who represented Sandra.

gesting that Ganea assign a portion of her eventual inheritance from the AIP to cover the fees and by suggesting arbitration. When no agreement could be reached, Rubenstein commenced the instant action on August 3, 2004, in the Supreme Court, Kings County, alleging a cause of action for breach of contract by virtue of Ganea's failure to pay $47,977.81 in fees and disbursements, and a cause of action sounding in quantum meruit. Ganea denied the material allegations of the plaintiff's complaint in a verified answer dated October 21, 2004, and asserted affirmative defenses and counterclaims regarding, inter alia, the absence of a written retainer agreement in violation of 22 NYCRR 1215.1 and satisfaction of the dispute by the fee award in the guardianship proceeding.[4]

On February 4, 2005, Ganea moved for summary judgment dismissing the complaint on the grounds of "full payment" of $18,375 from the Supreme Court and the unenforceability of further fees due to the absence of a written retainer agreement containing all information required by 22 NYCRR 1215.1. Though her notice of motion did not specifically seek judgment on any counterclaim, Ganea argued in her supporting affidavit that she was entitled to a $5,500 reimbursement for disbursements that she had paid to counsel in October 2002, presumably to be funded from the $18,375 fee award. In opposition, Rubenstein stated that the absence of a written retainer agreement was never intentional, as 22 NYCRR 1215.1 had become effective only a short time prior to his engagement as Ganea's counsel. Rubenstein was uncertain whether, at the time of the retention, he was aware of the new rule and whether it applied to nonmatrimonial actions. Rubenstein averred that he had suggested the parties arbitrate their fee dispute. In any event, Rubenstein maintained that the terms of the oral attorney-client retainer were meticulously explained, including the rates of fees charged and credit for any award received in the guardianship proceeding. He stated that Ganea understood the terms and agreed to them. By implication, Rubenstein refuted Ganea's contention that the $18,375 fee award represented full payment for services rendered, as the parties had an express understanding to the contrary.

In the order appealed from, the Supreme Court held that an attorney's failure to comply with the mandates of 22 NYCRR 1215.1 did not necessarily preclude the attorney from

---

4. Rubenstein denied all counterclaims in a reply dated December 20, 2004.

collecting fees. The Supreme Court reasoned that "blind adherence" to the rule could result in unfair windfalls to clients, and that an attorney's noncompliance with the rule should be reviewed upon the circumstances of each individual case. Here, given the recent enactment of 22 NYCRR 1215.1 and the lack of willfulness by counsel in disregarding its requirements, the penalty of precluding an award of fees was found to be "unduly harsh," permitting Rubenstein to recover not for breach of contract, but in quantum meruit. With regard to the amount of fees recoverable under quantum meruit, the Supreme Court held that the $18,375 fee award received in the guardianship proceeding barred any further recovery for guardianship-related services under the doctrine of res judicata. The Supreme Court allowed Rubenstein's claim to proceed on a quantum meruit basis as to the value of the legal services performed for Ganea outside the context of the guardianship proceeding.

Ganea appeals so much of the order as denied that branch of her motion which was for summary judgment dismissing so much of the second cause of action as sought to recover in quantum meruit the value of legal services Rubenstein rendered to her in matters unrelated to the guardianship proceeding.[5] Rubenstein cross-appeals from so much of the order as, in effect, granted those branches of Ganea's motion which were for summary judgment dismissing the first cause of action alleging breach of contract and so much of the second cause of action as sought to recover in quantum meruit the value of legal services rendered to Ganea in the guardianship proceeding beyond $18,375. We modify.

For reasons set forth below, the Supreme Court properly granted that branch of Ganea's motion which was for summary judgment dismissing the first cause of action alleging breach of contract, and properly denied that branch of Ganea's motion which was for summary judgment dismissing so much of the second cause of action as sought to recover in quantum meruit the value of legal services Rubenstein rendered to her in nonguardianship matters. However, we disagree with the Supreme Court that the $18,375 fee awarded in the guardianship proceeding is a res judicata bar to a quantum meruit award of additional fees.

---

5. Ganea's argument that she be entitled to a $5,500 reimbursement of expenses, not being included in the notice of motion, was not specifically addressed by the Supreme Court and is outside the scope of this appeal.

## II. The Provisions of 22 NYCRR 1215.1

■ Public policy dictates that courts pay particular attention to fee arrangements between attorneys and their clients, as it is important that a fee contract be fair, reasonable, and fully known and understood by the client (*see Jacobson v Sassower*, 66 NY2d 991, 993 [1985]; *Shaw v Manufacturers Hanover Trust Co.*, 68 NY2d 172, 176 [1986]; *Matter of Bizar & Martin v U.S. Ice Cream Corp.*, 228 AD2d 588 [1996]). If the terms of a retainer agreement are not established, or if a client discharges an attorney without cause, the attorney may recover only in quantum meruit to the extent that the fair and reasonable value of legal services can be established (*see Matter of Cohen v Grainger, Tesoriero & Bell*, 81 NY2d 655, 658 [1993]; *Campagnola v Mulholland, Minion & Roe*, 76 NY2d 38, 43 [1990]; *Matter of Schanzer*, 7 AD2d 275, *affd* 8 NY2d 972 [1960]).

22 NYCRR 1215.1, otherwise known as the "letter of engagement rule," was promulgated by joint order of the appellate divisions, and applies to all civil actions where the amount in controversy is $3,000 or more. The rule requires attorneys to provide all clients with a written letter of engagement explaining the scope of legal services, the fees to be charged, billing practices to be followed, and the right to arbitrate a dispute under Rules of the Chief Administrator of the Courts (22 NYCRR) part 137 (*see* 22 NYCRR 1215.1 [b]; *see generally Grossman v West 26th Corp.*, 9 Misc 3d 414 [2005]). The rule is also satisfied if the attorney and client execute a formal written retainer agreement reflecting the same information as required for a letter of engagement (*see Beech v Gerald B. Lefcourt, P.C.*, 12 Misc 3d 1167[A] [2006]). The rule became effective on March 4, 2002 (*see* 22 NYCRR 1215.1 [a]; *Brown Rudnick Berlack Israels LLP v Zelmanovitch*, 11 Misc 3d 1090[A] [2006]), approximately seven weeks before Ganea retained Rubenstein for the guardianship matter underlying this appeal.

The language of 22 NYCRR 1215.1 contains no express penalty for noncompliance (*see* 22 NYCRR 1215.1; *Beech v Gerald B. Lefcourt, P.C., supra; Matter of Feroleto*, 6 Misc 3d 680, 682 [2004]). Indeed, the intent of rule 1215.1 was not to address abuses in the practice of law, but rather, to prevent misunderstandings about fees that were a frequent source of contention between attorneys and clients. This intent was described by Chief Administrative Judge Jonathan Lippman upon the rule's adoption, that "this [rule] is not about attorney discipline in any way, shape or form, and we certainly do not expect in any

significant degree there to be a large number of disciplinary matters coming out of this rule" (Caher, *Rule Requires Clients Receive Written Letters of Engagement*, NYLJ, Jan. 22, 2002, at 1, col 1, and quoted in *Matter of Feroleto, supra* at 683). The purpose of the rule therefore is to aid the administration of justice by prodding attorneys to memorialize the terms of their retainer agreements containing basic information regarding fees, billing, and dispute resolution which, in turn, minimizes potential conflicts and misunderstandings between the bar and clientele.

An analogy is often drawn in reported cases between 22 NYCRR 1215.1 and 22 NYCRR 1400.3 (*see Beech v Gerald B. Lefcourt, P.C., supra; Lewin v Law Offs. of Godfrey G. Brown*, 8 Misc 3d 622, 626 [2005]; *Klein Calderoni & Santucci, LLP v Bazerjian*, 6 Misc 3d 1032[A] [2005]; *Feder, Goldstein, Tanenbaum & D'Errico v Ronan*, 195 Misc 2d 704, 706 [2003]; *see also* 120 Siegel's Practice Review, *Mandatory "Written Letter of Engagement" Rule*, at 1 [Mar. 2002]). The latter rule requires attorneys retained in domestic relations matters in Supreme or Family Courts to execute written retainer agreements with their clients which are to be filed with the court (*see* 22 NYCRR 1400.3). However, rule 1400.3, when compared to rule 1215.1, is considerably more detailed. Rule 1400.3 requires a description of the parties and the services to be rendered, the amount of any advanced retainer, circumstances under which any portion of the retainer may be refunded, the clients' right to cancel the agreement at any time, the terms of payment through the conclusion of the case, the frequency of billing which must be not less than every 60 days, the client's right to copies of case-related documents and correspondence, security interests, circumstances under which an attorney may withdraw as counsel, the arbitration of any disputes, and affixed to each retainer agreement must be a statement of client's rights and responsibilities (*see* 22 NYCRR 1400.3; *see also* 22 NYCRR 1400.1, 1400.2, 1400.4, 1400.5, 1400.7; 22 NYCRR 202.16 [c] [1]).

Whereas rule 1215.1 was not intended to address abuses, rule 1400.3 was specifically " 'promulgated to address abuses in the practice of matrimonial law and to protect the public' " (*Mulcahy v Mulcahy*, 285 AD2d 587, 588 [2001], quoting *Julien v Machson*, 245 AD2d 122 [1997]). The requirement that attorneys execute written retainer agreements with matrimonial clients is found not only in rule 1400.3, but also in Code of Professional Responsibility DR 2-106 (c) (2) (ii), which forbids

attorneys from "collect[ing] . . . any fee in a domestic relations matter . . . unless a written retainer agreement is signed by the lawyer and client" (*see* 22 NYCRR 1200.11). Predictably, therefore, an attorney's noncompliance with rule 1400.3 and concomitant breach of Code of Professional Responsibility DR 2-106 (c) (2) (ii) typically preclude the attorney's recovery of fees in domestic relations matters (*see Sherman v Sherman*, 34 AD3d 670 [2006]; *Ackerman v Gebbia-Ackerman*, 19 AD3d 519, 520 [2005]; *Pillai v Pillai*, 15 AD3d 466, 467 [2005]; *Bishop v Bishop*, 295 AD2d 382, 383 [2002]; *Kayden v Kayden*, 278 AD2d 202 [2000]; *Potruch v Berson*, 261 AD2d 494 [1999]).

Since rule 1215.1 is not underscored by a specific disciplinary rule and is not intended to protect clients against abusive practices, it lacks the "bite" of 22 NYCRR 1400.3 and Code of Professional Responsibility DR 2-106 (c). That crucial distinction was recognized by Bronx County Surrogate Lee Holzman in *Matter of Feroleto* (6 Misc 3d 680, *supra*), wherein it was held that an unintentional failure of an attorney to provide a letter of engagement in a nonmatrimonial matter did not warrant the harsh result of precluding the attorney from a quantum meruit fee, particularly where the client conceded that the attorney was to be compensated for the services rendered (*id*. at 684).

Conflicting decisions have been rendered by trial-level courts on the question of whether an attorney's noncompliance with rule 1215.1 precludes altogether a recovery of fees in quantum meruit.[6] Appellate courts have not decided the merits of the issue (*see Matter of Eby v Joseph E.S.*, 28 AD3d 1091 [2006]). Decisions at the trial level appear to fall into three categories. The first category permits the quantum meruit recovery of attorneys' fees notwithstanding noncompliance with 22 NYCRR 1215.1, and includes the decisions in *Matter of Feroleto (supra)*, from the Surrogate's Court, Bronx County, and *Grossman v West 26th Corp.* (9 Misc 3d 414, *supra*), from the Civil Court, Kings County. The second category of cases takes a "middle ground," permitting the noncompliant attorney to keep money already received from the client for services, while prohibiting the recovery of additional fees. These cases include *Beech v Gerald B. Lefcourt, P.C. (supra)*, from the Civil Court, New York

---

**6.** Of course, the recovery of fees is not precluded when the attorney-client relationship commenced prior to the effective date of 22 NYCRR 1215.1 (*see Glazer v Jack Seid-Sylvia Seid Revocable Trust*, 2003 NY Slip Op 51416[U] [Dist Ct, Nassau County, Oct. 27, 2003]; *cf. Brown Rudnick Berlack Israels LLP v Zelmanovitch, supra*).

County, *Lewin v Law Offs. of Godfrey G. Brown* (*supra*), from the Civil Court, Kings County, and *Smart v Adams* (4 Misc 3d 1026[A] [2004]), from the Supreme Court, Dutchess County. The third category includes cases from New York, Bronx and Nassau Counties, holding that the noncompliance with 22 NYCRR 1215.1 is an absolute bar to the recovery of attorneys' fees, and includes the decisions in *Nadelman v Goldman* (7 Misc 3d 1011[A] [2005]), *Klein Calderoni & Santucci, LLP v Bazerjian* (*supra*), and *Feder, Goldstein, Tanenbaum & D'Errico v Ronan* (*supra*). In other words, "no engagement letter—no fee" (*see* Davis, *Engagement Letters: Can't Live Without Them, Can't Change Them*, NYLJ, Jan. 5, 2004, at 3, col 1).

As a general matter, courts do not have the authority to impose a penalty or sanction absent enabling legislation or court rule authorizing the penalty or sanction (*see Matter of Premo v Breslin*, 89 NY2d 995, 997 [1997]; *Matter of A.G. Ship Maintenance Corp. v Lezak*, 69 NY2d 1 [1986]). Significantly, 22 NYCRR 1215.1 contains no penalty language in the event of an attorney's noncompliance, and it is not underscored by a specific disciplinary rule, unlike 22 NYCRR 1400.3 and Code of Professional Responsibility DR 2-106 (c) (2) (ii). If the Appellate Divisions, in jointly promulgating 22 NYCRR 1215.1, intended for the rule to serve a penal or disciplinary purpose, language could have been included to accomplish that purpose. The Appellate Divisions did not do so. We decline to extend the rule beyond its expressed terms (*accord* McKinney's Cons Laws of NY, Book 1, Statutes § 94; *see also Cahen v Boyland*, 1 NY2d 8, 14 [1956]; *Matter of Cooper*, 187 AD2d 128 [1993]; *Drelich v Kenlyn Homes*, 86 AD2d 648, 649 [1982]).

We find that a strict rule prohibiting the recovery of counsel fees for an attorney's noncompliance with 22 NYCRR 1215.1 is not appropriate and could create unfair windfalls for clients, particularly where clients know that the legal services they receive are not pro bono and where the failure to comply with the rule is not willful (*see Matter of Feroleto, supra* at 684). Our holding would be different were this matter a matrimonial action governed by the more stringent disciplinary requirements of 22 NYCRR 1400.3 and Code of Professional Responsibility DR 2-106 (c) (2). Here, Ganea concedes in her reply brief that "she did not think all legal services received would be free." Rubenstein's failure to comply with 22 NYCRR 1215.1 was unintentional, no doubt attributed to the promulgation of the rule only seven weeks prior to his retention. Accordingly, the

Supreme Court correctly held that Rubenstein could seek recovery of attorneys' fees upon the theory of quantum meruit.[7]

Rubenstein, as the attorney who failed to properly document the fee agreement in writing as required by 22 NYCRR 1215.1, bears the burden of establishing that the terms of the alleged fee arrangement were fair, fully understood, and agreed to by Ganea (*see Shaw v Manufacturers Hanover Trust Co., supra*, 68 NY2d at 176; *Matter of Schanzer, supra*, 7 AD2d at 278-279). Providing that Rubenstein establishes the client's knowing agreement to pay for legal fees not fully compensated by an award from the AIP's estate, Rubenstein may recover in quantum meruit the fair and reasonable value of the services rendered on behalf of Ganea prior to his discharge as counsel (*see Campagnola v Mulholland, Minion & Roe, supra*, 76 NY2d at 44), minus $18,375 awarded by the guardianship court.

We disagree with Ganea's argument that permitting an attorney to recover fees, despite a violation of 22 NYCRR 1215.1, would render the rule impotent and unenforceable. Attorneys continue to have every incentive to comply with 22 NYCRR 1215.1, as compliance establishes in documentary form the fee arrangements to which clients become bound, and which can be enforced through 22 NYCRR part 137 arbitration or through court proceedings. Attorneys who fail to heed rule 1215.1 place themselves at a marked disadvantage, as the recovery of fees becomes dependent upon factors that attorneys do not necessarily control, such as meeting the burden of proving the terms of the retainer and establishing that the terms were fair, understood, and agreed upon. There is never any guarantee that an arbitrator or court will find this burden met or that the factfinder will determine the reasonable value of services under quantum meruit to be equal to the compensation that would have been earned under a clearly written retainer agreement or letter of engagement.

III. The Effect of the Guardianship Award

■ Mental Hygiene Law § 81.16 (f) provides that "[w]hen a petition is granted, or where the court otherwise deems it appropriate, the court may award reasonable compensation for the attorney for the petitioner." An award of fees under Mental Hygiene Law § 81.16 (f) is discretionary and based upon a variety of factors, with the "paramount consideration" being the

---

7. We decline to specifically address Ganea's arguments regarding arbitration, as it is uncontested that Ganea was offered and declined an opportunity to arbitrate the parties' fee dispute.

best interests of the AIP (*see Matter of Lepkowski*, 164 Misc 2d 146, 149-150 [1995]). It is therefore possible for a court to find that an attorney entered into a reasonable fee agreement with the petitioner in a guardianship proceeding, but to also conclude that the amount to be paid as "reasonable compensation" by the AIP is less than the overall amount the petitioner agreed to pay (*id.*). Under such circumstances, attorneys may recover additional fees from the petitioner pursuant to the attorney-client fee arrangement (*see Hobson-Williams v Jackson*, 10 Misc 3d 58, 60 [2005]; *see also Matter of Grace PP.*, 245 AD2d 824, 825 [1997]; *Matter of Whitehead*, 169 Misc 2d 554, 562 [1996]).

Code of Professional Responsibility EC 2-19 provides that attorneys must reach a "clear agreement . . . with the client as to the basis of the fee charges to be made." Consistent with Code of Professional Responsibility EC 2-19, attorneys consulted by clients anticipating the commencement of proceedings under Mental Hygiene Law article 81 should make clear beyond question that any fee arrangement agreed upon is wholly independent of and not controlled by the determination of the guardianship court as to what may constitute reasonable compensation to the attorney (*Matter of Lepkowski, supra* at 149-50). Analogously, drawing again from matrimonial practice, an award of attorneys' fees to a spouse pursuant to Domestic Relations Law § 237 (a) does not preclude attorneys from seeking, from their own client, the balance of fees earned if the retainer agreement permits it (*see* Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C237:1, at; *Joel R. Brandes, P.C. v Ferraro*, 257 AD2d 610 [1999]; *Sassower v Barone*, 85 AD2d 81, 90 [1982]; *Reisch & Klar v Sadofsky*, 78 AD2d 517, 518 [1980]).

Based on the foregoing case law, the guardianship court's award of reasonable compensation to Rubenstein pursuant to Mental Hygiene Law § 81.16 (f) does not bar Rubenstein's efforts to recover additional fees from Ganea on a quantum meruit basis. Rubenstein bears the burden of establishing that he reached a clear agreement with Ganea that she would be responsible for fees incurred in the guardianship proceeding, including the amount that the fair value of legal services exceeds the amount awarded by the guardianship court (*see Hobson-Williams v Jackson, supra; Matter of Lepkowski, supra* at 150; NY St Bar Assn Comm on Prof Ethics Op 689 [1997]). Any misunderstanding or lack of clarity arising from Rubenstein's failure to provide a letter of engagement or enter into a signed

retainer agreement shall be resolved in favor of the client, Ganea (*see Matter of Feroleto, supra,* 6 Misc 3d at 685; *Matter of Lepkowski, supra* at 150-151; Code of Professional Responsibility EC 2-19).

IV. Ganea's Fee Obligations Outside the Guardianship Proceeding

The Supreme Court, while finding that Rubenstein was not entitled to an additional fee award for guardianship matters by virtue of the $18,375 paid pursuant to Mental Hygiene Law § 81.16 (f), held that Rubenstein was entitled to a quantum meruit recovery for additional legal services provided to Ganea unrelated to the guardianship proceeding. Since we find here that Rubenstein is entitled to recover attorneys' fees in quantum meruit notwithstanding the award from the guardianship court, Rubenstein is entitled to a quantum meruit recovery for guardianship services as well.

Thus, the order should be modified by deleting the provision thereof granting that branch of the defendant's motion which was for summary judgment dismissing so much of the second cause of action as sought to recover in quantum meruit the value of legal services rendered to the defendant in the prior guardianship proceeding in excess of $18,375, and substituting therefor a provision denying that branch of the motion; as so modified, the order should be affirmed insofar as appealed and cross-appealed from.

MASTRO, J.P., FLORIO and FISHER, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provision thereof granting that branch of the defendant's motion which was for summary judgment dismissing so much of the second cause of action as sought to recover in quantum meruit the value of legal services rendered to the defendant in the prior guardianship proceeding in excess of $18,375, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.