*891 OPINION OF THE COURT
Shlomo S. Hagler, J.
Procedural History
In or about October 2006, plaintiff Barry Mallín & Associates PC., formerly known as Mallín and Goldstein, PC. (plaintiff or law firm) commenced this action against defendant Nash Metal-ware Company Inc. to recover $10,200 for breach of an oral agreement to pay for legal services. Defendant interposed an answer to the complaint asserting that Nash Metalware did not authorize the law firm to perform legal services on its behalf, and the law firm is precluded from recovering any legal fees for failing to comply with the provisions of 22 NYCRR 1215.1.
Trial/Witnesses
The trial was conducted on November 7, 2007. Posttrial memoranda of law were submitted on December 7, 2007.
The named principal of the law firm, Barry Mallín, Esq., testified on plaintiff’s behalf. Defendants called Stephanie Eisenberg, the president of Nash Metalware, and Edward Lazarus, of Royal Engraving, as witnesses. This court credits the testimony of the defendant’s witnesses over the plaintiffs witness.
Findings of Fact
On or about May 11, 2005, the Mayor of the City of New York approved a certain change in zoning affecting the Greenpoint and Williamsburg areas of Northern Brooklyn, New York (Greenpoint-Williamsburg rezoning project or rezoning project). In the Greenpoint-Williamsburg rezoning project, the existing zoning and special mixed district designations would be changed, inter alia, to permit residential use on the waterfront and to restrict certain areas currently zoned for manufacturing use to light industrial use. The City of New York conducted an environmental impact statement (EIS) to assess various environmental effects of the Greenpoint-Williamsburg rezoning project.
A group or coalition of businesses adversely affected by the zoning changes formed to challenge the City of New York’s Greenpoint-Williamsburg rezoning project. This group included defendant Nash Metalware and Royal Engraving.
The group initially contacted Antonia Bryson, Esq., of the Urban Environmental Law Center who had been lead counsel in challenging a zoning change in Red Hook, Brooklyn. Ms. Bry *892 son was unable to exclusively represent the group due to other legal professional obligations, but she recommended three other law firms, including the plaintiff. On or about August 4, 2005, Ms. Biyson or Ms. Eisenberg scheduled a meeting with Mr. Mallín to discuss the case. On or about August 10, 2005, Mr. Mallín and an associate met with Ms. Bryson, and other representatives of the group, including Ms. Eisenberg and Mr. Lazarus. Mr. Mallín discussed many aspects of the case such as the lengthy EIS, the applicable four-month statute of limitations and the possible filing of a CPLR article 78 proceeding in Supreme Court, New York County, challenging the rezoning project. There was limited discussion of compensation except that Mr. Mallín initially agreed to a fixed legal fee of $60,000 for the prospective legal representation. However, Mr. Mallín later allegedly mailed Ms. Eisenberg a draft “Attorney Engagement Agreement” dated August 12, 2005 wherein the law firm agreed to fix the legal fee at $100,000, which also included “fees for counsel . . . [Ms. Bryson] and fees for experts and disbursements.” Plaintiff sought $50,000 upon signing of the agreement, $25,000 upon filing of the article 78 proceeding and the remaining $25,000 within 30 days thereafter. (Plaintiffs exhibit 1.) Neither Ms. Eisenberg on behalf of Nash Metalware nor any other member of the group executed the agreement.
At the meeting, neither defendant individually nor the group collectively retained the plaintiff to represent them as they were in the process of interviewing other prospective counsel. Ultimately, defendant and the group retained the service of another law firm that commenced an article 78 proceeding on their behalf.
Notwithstanding the fact that the agreement was not signed and no payment was tendered in accordance therewith, Mr. Mallín allegedly commenced legal representation on defendant’s behalf. Mr. Mallín allegedly expended about 77 hours but only billed for 34 hours in reviewing the lengthy EIS, researching cases and preparing a draft of the article 78 petition. Mr. Mallín conceded that he did not record his time contemporaneously with the work due to the looming statute of limitation deadline. However, when he was notified in early September 2005 that the group had selected another attorney, Mr. Mallín estimated that he had performed 34 hours of legal work at $300 per hour totaling $10,200 as of September 9, 2005. Nine months later, Mr. Mallín then generated a bill for legal services dated June 9, 2006 and sent it to the defendant for payment. The explanation *893 of fees merely indicated the total amount of time for many alleged tasks performed without an individual specific breakdown for each task and the corresponding time as follows.
“GREENPOINT-WILLIAMSBURG RE-ZONING CHALLENGE: Telephone Consultations with Client (Eisenberg); Telephone Discussions with Attorney Bryson; Meeting with Client and Potential Co-Counsel; Review of Environmental Impact Statement, particularly issues relating to business and employment impact and displacement; preparation of investigative questions for client an expert; commencement of draft of Article 78 Petition.” (Plaintiffs exhibit 2.)
While Mr. Mallín claimed he expended about 77 hours on the case, he conceded that the article 78 petition that he drafted was only about 75% complete in early September 2005, just a few days prior to the expiration of the statute of limitations deadline. (Plaintiffs exhibit 3.) The draft was a generic petition which did not reference any specific material from the EIS and lacked a caption, recitation of the parties, and a verification. Mr. Mallín did not send a copy of the draft petition to Ms. Eisenberg nor did Ms. Eisenberg sign it.
Conclusions of Law
Essential Element of “Meeting of the Minds” Necessary to Establish an Enforceable Oral Contract
There must be an “objective meeting of the minds” to establish an enforceable contract. (Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp., 93 NY2d 584, 589 [1999].) “In order for a breach of contract to exist, there must be a meeting of the minds on the agreement said to have been breached.” (Miranco Contr., Inc. v Perel, 29 AD3d 873, 873 [2d Dept 2006].) A “mere agreement to agree, in which a material term is left for future negotiations, is unenforceable.” (Joseph Martin, Jr., Delicatessen v Schumacher, 52 NY2d 105, 109 [1981] [the failure to agree on the amount or consideration for future rental or sale is unenforceable].)
In this regard, plaintiff has failed to meet its burden of proof to demonstrate that the parties had a “meeting of the minds” concerning defendant’s alleged oral agreement to retain the plaintiff to legally challenge the Greenpoint-Williamsburg rezoning project. It appears that there is conflicting evidence as to the amount of compensation sought and no “meeting of the *894 minds” occurred between the parties. Specifically, Ms. Eisenberg and Mr. Lazarus credibly testified that Mr. Mallín only sought $60,000 at the August 10, 2005 meeting, while the draft agreement that Mr. Mallín allegedly sent to defendant set the plaintiffs fee at $100,000 and Mr. Mallín later billed defendant on a $300 hourly basis. (Plaintiffs exhibits 1, 2.) The credible testimony elicited shows that defendant neither retained the plaintiff nor agreed to the amount of plaintiffs compensation.
Written Letters of Engagement/Retainer Agreements
By joint order dated December 20, 2001, the Appellate Divisions promulgated part 1215 of title 22 of the Official Compilation of Codes, Rules and Regulations of the State of New York (22 NYCRR part 1215). This rule became effective March 4, 2002 and applies to cases where the fee is “expected” to be $3,000 or more. (22 NYCRR 1215.2 [a].) The rule generally mandated attorneys to provide clients with letters of engagement prior to representation. (22 NYCRR 1215.1 [a].) The letter of engagement, inter alia, must provide an explanation of the legal services provided and the fees to be charged for such representation. (22 NYCRR 1215.1 [b] [1], [2].) However, instead of providing a letter of engagement, attorneys may obtain a fully executed written retainer agreement from clients after commencing representation provided it contains an explanation of the scope and fees to be charged. (22 NYCRR 1215.1 [c].) Unfortunately, this rule does not provide for a penalty in breach thereof.
For many years, trial courts have interpreted the intent of the drafters in promulgating rule 1215.1 very differently. There were at least three categories of conflicting interpretations concerning noncompliance with the above rule such as (1) permitting a quantum meruit recovery of attorney fees, (2) permitting the attorney to keep fees already received but prohibiting additional fees not yet paid and (3) prohibiting all legal fees under all circumstances.
Recently, the Appellate Division, Second Department, resolved the dispute and held that an attorney who fails to obtain a written retainer agreement or letter of engagement with a nonmatrimonial client in violation of rule 1215.1 may recover the reasonable value of services rendered on a quantum meruit basis. (Seth Rubenstein, P.C. v Ganea, 41 AD3d 54 [2d Dept 2007].) However, the Appellate Division noted that attorneys “have every incentive to comply with 22 NYCRR 1215.1, as compliance establishes in documentary form the fee arrangements to *895 which clients become bound, and which can be enforced through 22 NYCRR part 137 arbitration or through court proceedings.” (41 AD3d at 64.)
Thus, plaintiffs failure to comply with rule 1215.1 in not obtaining a signed letter of engagement or a retainer agreement is not fatal and it does not preclude the law firm from seeking to recover the reasonable value of services rendered on a quantum meruit basis.
Quantum Meruit
This trial appears to be the first reported case to apply the new ruling of the Appellate Division, Second Department, in Seth Rubenstein, P.C. v Ganea (supra). The Appellate Division concisely and clearly set forth the applicable law governing attorney and client disputes vis-á-vis express agreements and quantum meruit claims as follows:
“Public policy dictates that courts pay particular attention to fee arrangements between attorneys and their clients, as it is important that a fee contract be fair, reasonable, and fully known and understood by the client (see Jacobson v Sassower, 66 NY2d 991, 993 [1985]; Shaw v Manufacturers Hanover Trust Co., 68 NY2d 172, 176 [1986]; Matter of Bizar & Martin v U.S. Ice Cream Corp., 228 AD2d 588 [1996]). If the terms of a retainer agreement are not established, or if a client discharges an attorney without cause, the attorney may recover only in quantum meruit to the extent that the fair and reasonable value of legal services can be established (see Matter of Cohen v Grainger, Tesoriero & Bell, 81 NY2d 655, 658 [1993]; Campagnola v Mulholland, Minion & Roe, 76 NY2d 38, 43 [1990]; Matter of Schanzer, 7 AD2d 275, affd 8 NY2d 972 [I960]).” (41 AD3d at 60.)
The Appellate Division cautioned attorneys who fail to comply with rule 1215.1 because it may be difficult for them to meet the burden of proof in proving the terms of the agreement and the reasonable value of the services as follows:
“Attorneys who fail to heed rule 1215.1 place themselves at a marked disadvantaged, as the recovery of fees becomes dependent upon factors that attorneys do not necessarily control, such as meeting the burden of proving the terms of the retainer and establishing that the terms were fair, understood, and agreed upon. There is never any *896 guarantee that an arbitrator or court will find this burden met or that the fact-finder will determine the reasonable value of services under quantum meruit to be equal to the compensation that would have been earned under a clearly written retainer agreement or letter of engagement.” (41 AD3d at 64.)
The Appellate Division’s admonition is certainly prophetic and true in this case. Unlike the facts specified in the Second Department’s case of Seth Rubenstein, P.C. v Ganea, where the client readily conceded the retention of the attorney and understood that the legal services were not performed pro bono, the defendant herein convincingly challenged both the retention of plaintiff and any liability for legal services rendered. Plaintiff has failed to prove that the fee arrangement with defendant was fully known and understood by the defendant. The credible evidence supports the conclusion that the defendant never retained the plaintiff and ultimately retained the services of another attorney to challenge the Greenpoint-Williamsburg rezoning project.
Moreover, the plaintiff here only asserted the single cause of action of breach of an oral agreement in the complaint. Unlike the complainant in Seth Rubenstein, P.C. v Ganea, plaintiff here did not allege a cause of action in the complaint based on a quantum meruit theory.* Therefore, plaintiff may not recover the reasonable value of its legal services based on a quantum meruit basis. (Donohue v Minicucci, 174 AD2d 1013 [4th Dept 1991].)
Assuming, arguendo, that plaintiff asserted a claim based on quantum meruit, plaintiffs billing entries are too imprecise to deduce the reasonable amount of attorney’s fees. It is plaintiffs “burden and responsibility to clearly, and in detail, present the hourly rate for legal services performed by various counsel, the specific services rendered, and the time spent in performing these services, to avoid the court having to speculate or surmise this information.” (Employers Ins. Co. of Wausau v Team, Inc., 12 Misc 3d 1192[A], 2006 NY Slip Op 51540[U], *6 [Sup Ct, Kings County 2006], citing Equitable Lbr. Corp. v IPA Land Dev. Corp., 38 NY2d 516 [1976]; Orix Credit Alliance v Grace Indus., 261 AD2d 521 [2d Dept 1999].)
*897 Conclusion
Based on the preponderance of the credible evidence, plaintiff has failed to demonstrate that defendant breached an oral agreement to pay for legal services or to recover fees based on a quantum meruit basis. The clerk is hereby directed to enter a judgment dismissing this action.

 Plaintiff failed to move to amend the complaint to add a cause of action for quantum meruit at trial or to conform to the evidence adduced at trial.