Outeda v Asensio (2021 NY Slip Op 51069(U))

[*1]

Outeda v Asensio

2021 NY Slip Op 51069(U) [73 Misc 3d 136(A)]

Decided on November 5, 2021

Appellate Term, Second Department

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

As corrected in part through November 16, 2021; it
will not be published in the printed Official Reports.

Decided on November 5, 2021
SUPREME COURT, APPELLATE TERM, SECOND
DEPARTMENT, 2d, 11th and 13th JUDICIAL DISTRICTS
PRESENT: : THOMAS P. ALIOTTA, P.J., MICHELLE WESTON, DAVID ELLIOT, JJ

2018-2226 Q C

Laura S. Outeda, Appellant,
against
Nancy J. Asensio, Respondent. 

Robert S. Mazzuchin, Esq., P.C. (Robert S. Mazzuchin of counsel) for appellant.
Nancy J. Asensio, respondent pro se.

Appeal from a judgment of the Civil Court of the City of New York, Queens County (Tracy
A. Catapano-Fox, J.), entered March 19, 2018. The judgment, after a nonjury trial, dismissed the
complaint and awarded defendant $5,000 on her counterclaim.

ORDERED that the judgment is reversed, without costs, and the action is remitted to the
Civil Court for a new trial.
Plaintiff, who is an attorney, commenced this action seeking to recover the principal sum of
$10,280, which, she alleged in the complaint, is the balance due for legal fees and disbursements
based upon two separate retainer agreements she entered into with defendant: the first, to review
materials, including "the court's file," concerning defendant's mother's legal guardian; and the
second, to represent defendant in petitioning the Supreme Court, Queens County, pursuant to
Mental Hygiene Law article 81, to remove the legal guardian for the person and property of
defendant's mother and to have defendant appointed to serve in that capacity instead. Defendant
counterclaimed for $5,000, alleging legal malpractice and a failure to provide services. 
At a nonjury trial, plaintiff testified that, after doing "a substantial amount of work," she
[*2]prepared a petition, which she ultimately did not file because
she discovered that a petition had already been filed on defendant's behalf by defendant's prior
attorney. Instead, she filed a notice of appearance. Plaintiff asserted that she then attended court
conferences, communicated with the court-appointed guardian for defendant's mother, and
enabled visitation between defendant and her mother. Plaintiff testified that she had agreed to
work for an hourly rate of $375. Plaintiff stated the number of hours of work she had performed
and billed defendant for, which amount, together with $355 in costs and disbursements, totaled
the sum of $15,280. Plaintiff noted that defendant had paid her $5,000, leaving a balance due of
$10,280.
Defendant testified that plaintiff had justified her fees by claiming that she was an expert in
the field of elder law, when in fact she was not, and asserted that she was entitled to a refund of
the money she had paid to plaintiff because plaintiff had done nothing for her. 
While no documents were formally admitted into evidence, in its findings dictated on the
record after the trial, the Civil Court indicated that it had considered documentary evidence that
had been presented by both parties. The court questioned whether plaintiff had proven she was an
attorney, but found that even if she was, "she did not establish that she performed the legal
services for which she was retained." The court dismissed the complaint and awarded defendant a
judgment of $5,000 on her counterclaim. 
It was the attorney plaintiff's obligation to make a record and move documents into evidence.
However, given that the court considered various documents without setting forth on the record
the contents of the documents it reviewed or otherwise marking the documents it relied upon in
reaching its conclusion, and as the record on appeal is inadequate to allow for proper review
without these documents, the judgment must be reversed and the matter remitted to the Civil
Court for a new trial.
With respect to the dissent, it should be pointed out that, in findings that appear to have been
dictated extemporaneously on the record after the parties left the courtroom, the judge, while
pondering the issue, never found that plaintiff was not an admitted attorney. In its findings, the
court ultimately stated in part, "Despite this, Ms. Outeda still is counsel and has an obligation to
her client, assuming she is an attorney admitted to practice in New York, she had an obligation to
her client to proceed and file the petition or once she filed the Notice of Appearance, to file an
Order to Show Cause to be relieved as counsel. None of this ever happened."
Accordingly, the judgment is reversed and the action is remitted to the Civil Court for a new
trial.
ALIOTTA, P.J., and ELLIOT, J., concur.
ELLIOT, J., concurs in a separate memorandum:
I write separately to further address the partial concurrence and partial dissent of my
colleague. I would note, first, that the court issued a written "Decision After Bench Trial" dated
March 2, 2018, which merely states, under the "Decision" heading, "After trial, Judgment for the
defendant, dismissing the claim. Decision on the counter claim for the defendant against the
plaintiff for the sum of $5,000.00, together with statutory costs." Under the "Comments" heading
only the word "None" is typed, followed several lines later by the sentence, "The Clerk is hereby
directed to enter Judgment accordingly." Thus, the judge's extemporaneous comments regarding
plaintiff's status as an attorney were not referenced in the court's written decision. In any event, as
noted in the majority opinion, the court did not rule that plaintiff was not an admitted
attorney.
Second, contrary to my colleague's position, the record demonstrates that plaintiff had a full
opportunity to present her case. She was not cut off at the start of the trial without any further
opportunity to present her case. Rather, she proffered testimony as part of her case in chief and
then after defendant testified, and she was given an additional opportunity to substantiate her
request for $10,280 at the conclusion of defendant's presentation on her counterclaim.[FN1]
The court also requested all of plaintiff's documents for review. It was only then that the court, as
it is permitted to do after hearing repeatedly from both parties, declined to provide plaintiff
additional time for rebuttal.
In my view, the court did not, contrary to the view expressed by the dissent, present an
appearance of bias or abuse its discretion, and the judge was within her authority to control the
proceedings before her. To that end, it is noted that multiple cases are often tried before the same
judge in a single day in New York's courts of limited jurisdiction. I believe that we should not
retrospectively sort through potential issues reviewed by a judge in factfinding—one such
issue being plaintiff's authority to practice law—particularly where, as here, that issue had
no impact at all on the decision and amounts to what can be described, at best, as dicta under the
circumstances.
WESTON, J., concurs in part and dissents in part, and votes to reverse the judgment and
remit the matter to the Civil Court for entry of a judgment awarding plaintiff the principal sum of
$10,280 and dismissing defendant's counterclaim in the following memorandum:
As an appellate court, we are duty bound to review the record in a disinterested manner and
rule upon the propriety of the conduct and rulings made by the trial court. In rare cases, the error
under review is so egregious that an appellate court must resort to stern language to ensure that
the error is not repeated (see e.g. Porcelli v Northern Westchester Hosp. Ctr., 110 AD3d
703 [2013]). This is such a case. The trial court not only ignored the proof submitted by plaintiff
in support of her claim for fees but created an appearance of bias by abruptly ending plaintiff's
presentation of her case and questioning plaintiff's status as an attorney. Moreover, the trial
court's decision to award defendant a refund of her retainer fee was completely devoid of proof.
Thus, while I agree with the majority that the judgment must be reversed, I vote to award
judgment to plaintiff on her complaint in the principal sum of $10,280 and dismiss defendant's
counterclaim.
Although the majority states that "[n]o documents were formally admitted into evidence," the
majority overlooks the fact that the trial court deprived plaintiff of the opportunity to formally
admit documents into evidence and litigate her case fully. Shortly into her case, plaintiff sought
to introduce copies of her invoices detailing the time spent and the expenses incurred in
representing defendant. The court interjected "[w]hy don't you give us what you have[,]" and then
proceeded to defendant's case without any further input from plaintiff. After abruptly ending
plaintiff's case, the court permitted defendant and the defense witness to testify unimpeded.
Indeed, over the course of a 14-page trial transcript, plaintiff was cut off after one page, while
defendant was permitted to defend her case over the remaining 13 pages.[FN2]
When plaintiff attempted to continue after defendant testified, the court barred her from doing
so:
"Plaintiff: I have . . .
The Court:No, the trial is over. It's too late. If you wanted to submit this as an attorney, you
know, you had time to submit that during your discussion" (emphasis added).
Any issue as to whether the exhibits were properly marked was not the fault of plaintiff.
While a trial court has the authority to control the proceedings, "that 'power is one that should be
exercised sparingly' " (Porcelli v Northern Westchester Hosp. Ctr., 110 AD3d at 706,
quoting People v Yut Wai Tom, 53 NY2d 44, 57 [1981]). Trial judges must, at all times,
"maintain an atmosphere of impartiality" and "exercise a high degree of patience and
forbearance" (Porcelli v Northern Westchester Hosp. Ctr., 110 AD3d at 706 [internal
quotations and citations omitted]). Only when such attributes are present can a litigant be assured
of a fair and impartial trial.
Notwithstanding the failures listed above, the court acknowledged that documents provided
by the plaintiff were reviewed prior to rendering the decision. Although the record is [*3]sparse and the court failed to specifically mark the items received in
evidence during the trial, plaintiff transmitted, posttrial, 11 pages of "proposed amendments and
objections" to the transcript. Included as a proposed amendment were the following items which
plaintiff had submitted into evidence: "Plaintiff's Exhibit 4: copies of three invoices detailing
time spent and expenses incurred on behalf of and at the request of defendant." The court below
reviewed the proposed amendments only striking two of plaintiff's changes to the transcript,
neither of which were Plaintiff's Exhibit 4. Indeed, the basis on which the court struck one of the
changes was that Plaintiff's Exhibit 4 reflected the evidence received during the trial. Thus, the
record before this court is sufficient to permit appellate review.
The trial court overstepped its authority to maintain the orderly administration of the
proceedings and projected the appearance of bias against plaintiff. In addition to curtailing
plaintiff's presentation of the evidence and giving defendant significantly more leeway in
defending her case, the trial court inexplicably expounded at length on the "question" of whether
plaintiff was, in fact, an attorney. In dismissing plaintiff's complaint and granting defendant's
counterclaim, the court concluded that, based on the evidence before it, plaintiff failed to
establish herself as an attorney and deserved nothing. Defendant never challenged plaintiff's
admission to the bar in the presentation of her defense and counterclaim. 
Despite the proof, the trial court made a finding that plaintiff was not an attorney:
I find interestingly enough, just looking at the complaint and the answer, [plaintiff] does not
put that she's counsel. She doesn't put Esquire on her complaint or on her reply papers. In her
caption, she shows no proof that she is actually an admitted attorney in New York. While she
presented a bio that was supposed to be a resume, it does not state the law school she went to, it
does not state the college she went to, nor does it state the year she graduated. It says that she is
admitted in New York but does not indicate which department she is admitted to, nor does it
state what year she was admitted to any department in New York. So on that ground, minimally,
she did not establish that she is an attorney . . . .
The court's decision not only significantly misrepresents the record but creates an issue
where none existed. Moreover, the record of plaintiff's admission to practice law in New York
courts was readily available on the website for the New York State Unified Court System. To
suggest that plaintiff is not an attorney simply because she does not use the title "Esquire" is
barmy. The use of the title "Esquire" is not a prerequisite for an attorney to practice law. Indeed,
the word "Esquire," usually a courtesy title, historically was a title of respect accorded to men of
higher social rank (see Cervone v Cervone, 155 Misc 543 [Sup Ct, NY County 1935]). It
is hardly a basis for determining whether an individual is licensed to practice law. On this record,
it was sophistic for the court to conclude that plaintiff was not an attorney at law.
This record amply demonstrates that plaintiff is, indeed, an attorney. Plaintiff's complaint
states she is "an attorney duly licensed to practice law before the courts of the State of New York,
[*4]with an office located in Queens County, New York State."
Upon stating her appearance for the record, plaintiff affirmed, under oath, that she was an
attorney. She presented her business card to the court, as well as her professional attorney
biography, which listed the college and law school she attended, the respective years of
graduation, and her admission to the New York State Bar. She indicated that she was a
well-known attorney practicing within the courthouse and was a small claims arbitrator in the
jurisdiction. In addition, plaintiff had filed a notice of appearance in the guardianship proceeding,
and she testified as to her legal experience.
Further, it was an abuse of discretion to dismiss the complaint and award defendant monies
on her counterclaim. Plaintiff sufficiently demonstrated that defendant knowingly entered into an
agreement for her services, and that she had performed legal work for defendant. Plaintiff
prepared a petition, which was signed by defendant.[FN3]
Plaintiff made numerous appearances
on defendant's behalf and successfully advocated for defendant to obtain visitation rights with her
mother. Since defendant failed to provide complete information, plaintiff had to expend several
hours gathering the facts and history of the proceedings. Plaintiff thoroughly documented the
legal work she performed. It was not until defendant received the bill for legal services that she
fired plaintiff as her attorney. 
"A client may always discharge his [her] attorney, with or without cause, and in the absence
of a contract providing otherwise an attorney discharged without cause is entitled to be
compensated in quantum meruit" (Jacobson v Sassower, 66 NY2d 991, 993 [1985];
accord Matter of Cohen v Grainger, Tesoriero & Bell, 81 NY2d 655, 658 [1993]). In
such instance, "the attorney may recover only in quantum meruit to the extent that the fair and
reasonable value of legal services can be established" (Seth Rubenstein, P.C. v Ganea, 41
AD3d 54, 60 [2007]).
"In fixing an award of legal fees in quantum meruit, a court should consider evidence of the
time and skill required in the case, the complexity of the matter, the attorney's experience, ability,
and reputation, the client's benefit derived from the services, and the fee usually charged by
attorneys for similar services" (SBC 2010-1, LLC v Smits Structure Corp., 167 AD3d
795, 795 [2018]; accord Breidbart v Wiesenthal, 117 AD3d 766, 767 [2014]; Angotta
v Zelezny, 112 AD3d 570, 571 [2013]; DeGregorio v Bender, 52 AD3d 645, 646
[2008]).
Here, the record sufficiently contains documentation of the services rendered by plaintiff, the
number of hours worked, the hourly rate charged, and that the hourly rate was consistent with the
standard in the legal community based upon the attorney's knowledge and experience. In view of
the foregoing, the court should have awarded plaintiff the principal sum of $10,280 on the
complaint.
With regard to defendant's counterclaim, defendant failed to substantiate her claim for a
refund of her retainer. Other than her bald assertion that plaintiff did no work, defendant offered
nothing in support of her counterclaim.[FN4]
To the contrary, defendant acknowledged several meetings with plaintiff, that plaintiff went
to the courthouse and "scrutinized" the file, emailed her, communicated with the court evaluator
and her mother's attorney, and that she now has visitation with her mother. On this record,
defendant's counterclaim is without merit and should be dismissed.
Accordingly, I vote to reverse the judgment and award plaintiff the principal sum of $10,280
on the complaint and dismiss defendant's counterclaim.

ENTER:
Paul Kenny
Chief Clerk
Decision Date: November 5, 2021

Footnotes

Footnote 1: The trial transcript begins on
page 3; Plaintiff testified from page 3 through 5, and defendant testified from pages 6 through 10.
Plaintiff was then given an opportunity to cross-examine, but plaintiff instead offered further,
rebuttal testimony on pages 11 and 12. Upon calling a witness, the defendant and her witness
testified on pages 13 and 14. Plaintiff then testified again on pages 15 and 16, with the defendant
interrupting, and the court concluded the trial and declined to accept further testimony at the top
of page 17. 

Footnote 2: While length of time taken to
present evidence is not necessarily indicative of the weight to be given to a case, it may
demonstrate bias against a particular party.

Footnote 3: To the extent the court faulted
plaintiff for not filing the petition on defendant's behalf, the record makes clear that plaintiff did
not file the petition once she discovered that a petition was already pending. Any suggestion that
plaintiff had an obligation to her client to proceed with filing a petition under these
circumstances, and is not entitled to compensation for work performed, ignores the ethical
obligations of attorneys to the court and cannot be explained by sound legal principles.

Footnote 4: The court below made a finding
that defendant's husband "did not have any testimony to give, but confirmed the statements made
by [defendant]." The court then awarded judgment to defendant on the counterclaim. Defendant's
husband's testimony consisted of the following two words: "That's it." This statement is grounded
in hearsay and cannot be the basis for a decision.