Matter of Glusing (2024 NY Slip Op 24125)

[*1]

Matter of Glusing

2024 NY Slip Op 24125

Decided on April 26, 2024

Surrogate's Court, Monroe County

Ciaccio, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on April 26, 2024
Surrogate's Court, Monroe County

In the Matter of the Estate of James L. Glusing Deceased. Being an Application to Compromise and Allocate and Distribute Proceeds of an Action For Wrongful Death and Pain and Suffering.

File No. 2022-537/A

Matthew S. Raphan, Esq., of counsel to Raphan Law Partners, LLP, Attorneys for Ollie M. Tucker, the Petitioner. 

Christopher S. Ciaccio, J.

James L. Gusling died as a result of exposure to "Roundup," the weed killer manufactured by the Monsanto Corporation, which caused non-Hodgkin's lymphoma.
He is survived by a spouse, Ollie M. Tucker, and four adult children.
The spouse has petitioned, pursuant to EPTL 5-4.6 (a) for approval to compromise (and to distribute and allocate the proceeds of) a claim against Monsanto for wrongful death and pain and suffering.
Section 22 NYCRR 207.38 of the Uniform Rules for Surrogate's Court sets forth the information that needs to be included in the application for approval, information that in general allows the court to be assured that the "widows and orphans" surviving a decedent are fully protected, that is, that the amount of the settlement is fair and reasonable, in view of the how the injuries occurred and the nature and extent of the injuries and other damages.
In numerous respects, the instant Petition fails to comply with the requirements of 22 NYCRR 207.38 and is otherwise deficient. 
Settlement Amount
The claim settled for $107,885.12. Whether that number is reasonable or not, the court has no way of discerning, because, ignoring the mandate of 22 NYCRR 207.38, subdivision (a), the Petition informs the court nothing about the "time, place and manner in which the decedent sustained the injuries." Although the court is informed that the first exposure to Roundup was in 1989, nowhere does the Petition state on how many occasions decedent was exposed, or the length of time he was exposed, or the circumstances of his use of Roundup. The circumstances of the exposure would allow the court to determine whether it was more advantageous to the Estate to proceed with litigation and trial or to settle. Considering the length of time the decedent [*2]suffered (as discussed below), the settlement amount is paltry, unless there was an issue with proving liability. But the court is not informed whether that is the case.
The Petition fails to inform as to the full extent of the injuries. It states that the decedent was, after he first used Roundup, diagnosed with a "rare strain of non-Hodgkin's lymphoma" and that he was in "extreme pain" and discomfort, confined to bed, and died. However, nowhere does the Petition state the length of time the decedent experienced the pain and discomfort, or how long he was confined to bed, both of which are circumstances needed to assess whether the settlement amount was "reasonable."
Subdivision (b) (3) requires a complete statement as to the "nature and extent of the disability." The Petition states that the decedent had cancer, was in extreme pain and discomfort, but fails to set forth the length of disability. Reference is made to "lifelong medical treatment," but if that is indeed the case, and if it is assumed he required treatment from the date of exposure to his death, a period of more than 25 years, it calls into question the reasonableness of a settlement amount of $107,885.12. 
Distribution
The Petition fails to inform, as required by subdivision (b)(1), as to the "occupation and earnings" of the decedent, stating that since none of his children sustained a "pecuniary loss," "salary and mortality tables are not of relevance."
Petitioner, or her attorney (there is no attorney affidavit, as required by subdivision [d]), does not understand the full scope of what is encompassed the term "pecuniary loss." "Pecuniary loss" is not limited to the hard cash that the decedent was providing to the distributees (his children), but includes "(l)oss of support, voluntary assistance and possible inheritance" which are "injuries for which damages may be recovered (Gonzalez v New York City Hous. Auth., 77 NY2d 663, 668 [1991] citing Parilis v Feinstein, 49 NY2d 984, 985 [1980]).
Further, it has been held that "it has 'long been recognized that pecuniary advantage results as well from parental nurture and care, from physical, moral and intellectual training, and that the loss of those benefits may be considered within the calculation of 'pecuniary injury' " (Kenavan v City of New York, 120 AD2d 24, 33 [2d Dept 1986], affd 70 NY2d 558, 517 [1987], citing DeLong v County of Erie, 89 AD2d 376, 386 [4th Dept 1982], affd 60 NY2d 296 [1983]; see also, Gonzalez v New York City Health & Hosps. Corp., 98 AD2d 685 [1st Dept 1983]).
Indeed the Pattern Jury Instruction quotes this language, (PJI 2:320.2) stating that "In fixing the value of AB's services you must take into consideration . . . the intellectual, moral and physical guidance and assistance (he, she) would have given the children had (he, she) lived . . . "
The decedent's salary of course and the circumstances of his work habits, expected work-life and mortality would have been relevant to the "possible inheritance" he would have left his children (Gonzalez v New York City Hous. Auth., 77 NY2d 663, 668 [1991]).
The petition fails to include the "names, addresses, dates of birth and ages of all persons entitled to take or share in the proceeds of the settlement of judgment" (subdivision [b][2]), in other words, the children of the decedent, his distributees. Decedent was 68 years of age at the time of his passing. It is not inconceivable that he provided them considerable and compensable [*3]"moral guidance and support."[FN1]

Liens
Subdivision (b) (5) requires a statement as to whether "hospital, medical or nursing services" have been paid in full. The "wherefore" clause, as well as a line on a ledger of sorts attached as an exhibit to the Petition, refers to a payment of $32,365.54 to "Medicare." There is no indication that this was a payment in full or whether the amount was negotiated. There is listed on the ledger a disbursement of $825.00 for a "lien resolution fee," although it does not say to whom it was paid or whether some type of negotiated resolution was reached. Medicare has a very simplified system that produces the amount owed to satisfy its lien. It seems unreasonable that a fee had to be paid to secure that information. Additionally, a copy of the lien should have been attached.
Fees
Subdivision (d) (4) requires an affidavit stating, "the services rendered by the attorney in detail." No such affidavit was provided, either by the attorney who worked on the civil action or by the attorney who prepared and filed the papers in Surrogate's Court. All that is known, as set forth by the Petitioner is that the attorneys in the civil action engaged in "extensive negotiation" in "good faith" and that they "zealously" represented their client. This is either a patently insufficient description of attorney services, or one suggesting implicitly that the case was settled following a telephone call with the adjuster. 
For such services the attorneys charged 40%. That presents a problem.
First of all, the Petition itself states that "[t]he law of the State of New York is the only law applicable." The law of New York (22 NYCRR 1015.15: Contingent fees in claims and actions for personal injury and wrongful death) limits an attorney's fee in cases of personal injury and/or wrongful death to 33 and 1/3 percent, net of disbursements.
In any event, the retainer agreement, filed separately from the Petition, was signed in 2019, well before the issuance of letters in 2022. Thus, it is a nullity, the spouse having no authority to enter into an agreement on behalf of the estate. Missing as well is a statement required by subdivision (d)(5), the name of the "person with whom such (retainer) agreement was made and the terms thereof."
Additionally, in Surrogate's Court, in the context of an application to compromise an action involving wrongful death and/or pain and suffering, and again in consideration of its historical mandate to protect "widows and orphans," "[t]he court bears the ultimate responsibility for fixing and determining the compensation of an attorney for services rendered to a fiduciary (see SCPA 2110; In re Estate of Gluck, 279 AD2d 575, 576 [2d Dept 2001]; Matter of Storteky, 85 NY2d 518 [1995]; Matter of Vitole, 215 AD2d 765, 627 NYS2d 444 [2d Dept 1995]; Matter of Phelan, 173 AD2d 621 [2d Dept 1991]).
In so doing, courts will evaluate a number of factors and, without necessarily placing more emphasis on any one factor over another, weigh the various considerations to arrive at a just conclusion" (Matter of Persaud, 70 Misc 3d 1221[A], 2021 NY Slip Op 50171[U], *1 [Sur Ct, Queens County 2021]).
"As set forth consistently in the vast decisional law on this topic, courts will consider: time spent (Matter of Kelly, 187 AD2d 718 [2d Dept 1992]); complexities of the tasks involved (Matter of Coughlin, 221 AD2d 676 [3d Dept 1995]); customary fee charged by the Bar for similar services (Matter of Potts, 123 Misc. 346 [Sur Ct, Columbia County 1924]); lawyer's experience and reputation (Matter of Brehm's Estate, 37 AD2d 95 [4th Dept 1971]); nature of the services provided (Matter of Van Hofe, 145 AD2d 424 [2d Dept 1988]); amount of litigation required (Matter of Sabatino, 66 AD2d 937 [3d Dept 1978]); and the size of the estate (Matter of Kaufman, 26 AD2d 818 [1st Dept 1966])" (Matter of Persaud, 70 Misc 3d 1221[A], 2021 NY Slip Op 50171[U], *1-2 [Sur Ct, Queens County 2021]).
None of the above factors have been addressed on behalf of the attorneys claiming a fee. There is no retailed recitation of services provided, other than a general statement as to having "negotiated" with the defendant. There are no (contemporaneous) time sheets attached to the Petition. While this would not be unusual in a contingency fee matter, the court is in the dark as to whether the attorneys spent one hour or a hundred working out a settlement in the case (see Matter of Persaud, 70 Misc 3d 1221[A], 2021 NY Slip Op 50171[U] [Sur Ct, Queens County 2021]).
Further, there is no mention of who did the negotiating, of the experience or reputation of the attorneys involved, the complexity of the case, or of the unique skills the attorneys brought to the work performed that resulted in the settlement. 
The Petition rightfully deducts from the gross amount of attorney's fees and amount of $7,500.00 for "Compromise Hearing to Raphan Law Partners." An additional $1,200.00 is deducted for "probate fee to Archer Systems."
Based on what is set forth in the Petition (again, there is no attorney affidavit) the fee charged for the compromise proceeding work cannot be justified.
This is a simple and straight forward petition to compromise. The petition is "bare bones" (as well as being deficient in the many respects detailed above). It could have been prepared, and very well may have been, by an experienced paralegal. As for the experience and reputation of the attorneys as justification for the (in this community) unheard-of fee, Raphan Law Partners is unknown in this community, and no information is provided regarding the experience and reputation.
There is a fee of $1200.00 to be paid to an entity known as "Archer Systems." What role Archer Systems had to play is a mystery. They are unknown to this court. 
In addition to the fee for a "compromise hearing," and one to "Archer Systems "for probate," there is a "Third-Party Fee" of $4941.06 payable to "Raphan Law Partner" for "probate." Presumably (although the petition gives no basis to presume anything) this is a fee charged to file the estate administration and secure letters of administration. No detail was provided as to the work and time involved, and no detail as to the "disbursements. 
Thus, the total fee being charged for filing for letters of administration and then filing to compromise a personal injury/wrongful death settlement is $13,641.06. This is unconscionable.
An ordinary and reasonable fee in this community for doing the same amount of work would be $2,500.00 — $3,000.00, broken down as $1500 for the filing for letters of administration and $1500.00 for the petition to compromise. The court ordinarily mandates that the fee for the compromise proceeding to be paid out of the contingency fee and not added on to the estate's expenses.
Expenses
The "Lien Resolution" fee, the "QSF Administration" fee and the "Case Specific Expenses" are disallowed, as there is no explanation as to what any of those fees are, what services they represent, and to whom they are being paid.
CONCLUSION
In the time that this writer has been on the Surrogate's court bench, the inadequacy and even the unconscionability of applications to compromise and allocate and distrbutee wrongful death and pain and suffering actions have been more the rule than the exception. Missing information, failure to file the requirements of 22 NYCRR 207.38, excessive fees requests, not only by the civil action attorneys but also the attorneys retained to handle the proceedings in Surrogate's court, fees for handling the compromise proceeding taken out of the estate assets, not the contingency fee (see Matter of Falu, 1/22/2015, NYLJ 25, col. 5 [ Sur Ct NY County]), improper and unsupported allocations between wrongful death and pain and suffering, waivers that fail to recite required language (22 NYCRR 207.38[f]).
Never, though, has this writer seen an application so lacking in information and so egregiously deficient in its request for approval and for fees.
With regard to the fees claimed by the attorneys who negotiated the civil claims, and who claim 40% of the proceeds, it is to be noted that 22 NYCRR 1015.15(a), besides limiting the fee to one-third of the recovery, also states that "compensation which is in excess of such scheduled fees shall constitute the exaction of unreasonable and unconscionable (emphasis added) compensation in violation of the applicable provisions of the Rules of Professional Conduct (section 1200.0 of this Title) . . . ."
Based on what is the application to compromise (and what is not), this application for fees is truly unreasonable and unconscionable.
Because there is no retainer agreement included with the application (and if the retainer was for a contingent fee of 40 percent, it would be invalid in any event) the court can only award an amount consistent with "quantum meruit," i.e., the reasonable value of services (see Seth Rubenstein, P.C. v Ganea, 41 AD3d 54, 62 [2d Dept 2007]; Speken v Columbia Presbyt. Med. Ctr., 284 AD2d 229, 229 [1st Dept 2001] Matter of Polyan, 204 AD2d 727, 728 [2d Dept 1994])
Yet, even in calculating that sum, the court is without any description of the services rendered, other than, in the case of the attorneys who prosecuted the civil action, that "negotiations" were carried out "zealously."
Thus, a reasonable fee on a settlement of $107,885.12, reflective of the time needed to open the file, investigate the incident resulting in liability, secure and review the medical records, research liability issues, and write a "demand letter" leading to negotiations and discussions of settlement amounts, would be $16,000.00 (approximately 40 hours times a billing rate of $400.00 per hour, standard in this community), which is the sum awarded herein.
Out of that sum is to be paid to the attorneys who brought the compromise proceeding, Raphan Law Partners, the sum of $2000.00. No award is made for "Archer Systems" because, what service they performed is not set forth. There is no award for "case specific expenses," as there is no itemization of what those were. Nor is any award made for "lien resolution fee" or "QSF Administration fee," for the same reason, failure to provide details of services. 
An award is made for $1000.00 to the attorneys who petitioned for letters of administration, to be paid out of the estate net sum. 
The balance of $90,885.12 is to be held in escrow pending proof of the amount needed to resolve the Medicare lien. 
The court will require an amended petition to address whether any "pecuniary loss," using the definition in the Pattern Jury Instruction and case law, was sustained by the distributees.
The Petitioner shall submit an Order.
Dated: April 26, 2024
Rochester, New York
Hon. Christopher S. Ciaccio
Surrogate Court Judge

Footnotes

Footnote 1:Although the ages of the children and their addresses are set forth in the probate petition, the court should not have to refer back to it in order fill in the missing portions of the petition to compromise.